Plaintiff, Jeffrey D. Messick, as executor of the estate of Donna Messick Davis, brought a dram shop and wrongful death action against Metropolitan Restaurant and Lounge, Inc., Metropolitan Fixtures Corporation, and Metropolitan Management Corporation. Joseph Moring, M.D., and William Drane, M.D., were sued individually and as the stockholders, officers, and directors of the three corporate defendants. *Page 893 
Messick appeals from an order granting a summary judgment (made final pursuant to Rule 54(b), Ala.R.Civ.P.) relieving Moring and Drane of all personal liability on the ground that they were protected by the doctrine of limited shareholder liability. We affirm.
In 1977, Moring and Drane organized three corporations for the purpose of operating a restaurant and lounge popularly known as "The Met." Metropolitan Restaurant and Lounge, Inc., was a non-profit corporation and held the liquor license, since the establishment sold alcoholic beverages on Sunday. Metropolitan Fixtures Corporation was organized to contract with the non-profit corporation to provide the club's premises and all its fixtures. Metropolitan Management Corporation was organized to contract with the non-profit corporation to provide employees and management of the club. Moring and Drane were the directors of the non-profit corporation and the shareholders, officers, and directors of the other corporations.
The circumstances giving rise to this cause of action involve the employees of The Met allegedly serving alcoholic drinks to Peter Michael Gregor while he was visibly intoxicated on the night of August 4, 1982. In the early morning hours of August 5, 1982, while intoxicated, Gregor drove his automobile through the intersection of Old Shell Road and the East Service Road of Interstate 65 in Mobile, Alabama, and struck an automobile being driven by Donna Messick Davis, causing serious bodily injuries which resulted in her death.
Messick brought an action against those entities doing business as The Met for negligence and for violating the Dram Shop Act, Ala. Code (1975), § 6-5-71. The complaint was later amended to allege that all three corporations were the alter egos of Moring and Drane and that the corporations were used as instrumentalities for avoiding personal liability and that the doctors had failed to adhere to corporate formalities.
In order for summary judgment to be appropriate, the pleadings, affidavits, depositions, admissions, and answers to interrogatories must show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A.R.Civ.P. 56(c). BonSecour Fisheries, Inc. v. Barrentine, 408 So.2d 490
(Ala. 1981). Where there is a scintilla of evidence in support of a cognizable theory advanced by the nonmoving party, the trial court must deny the motion for summary judgment and allow the factual questions to go to the jury.Duff v. Southern Ry., 496 So.2d 760 (Ala. 1986). The decision of when to impose personal liability on a shareholder or officer is a question of fact treated as an evidentiary matter to be determined on a case by case basis.Cohen v. Williams, 294 Ala. 417, 318 So.2d 279
(1975).
Because this is an appeal from a summary judgment, we review the record for evidence that would yield any inference in support of Messick's claim creating a factual dispute for resolution by a jury. Therefore, we recite those facts most favorable to the argument of Messick and from which must be inferred any disputed material fact. Marks FitzgeraldFurniture Co. v. Clarklift of Alabama, Inc.,494 So.2d 614 (Ala. 1986).
On Messick's request, Moring and Drane either produced, or allowed Messick's expert to inspect, nearly 2000 pages of corporate records and exhibits. Documents such as ledgers, corporate minutes, tax returns, financial statements, and corporate books were made available for inspection by Messick.
Messick questions only two aspects of the operation of the corporations and argues that these two aspects would be sufficient evidence for a jury to impose personal liability on Moring and Drane: 1) the write-off of a 1979 loan of $112,000 to the stockholders as a bad debt, with no effort to collect; and 2) the transfer of money into a Merrill Lynch account without any documentation as to the disposition of these funds.
On May 3, 1978, Moring and Drane borrowed $100,000 from the First National Bank of Mobile in their own names; they were personally liable for this debt. In *Page 894 
1979, the Fixture corporation took an assignment of the debt and paid off the note in the doctors' individual names. The Fixture corporation's tax return for the fiscal year ending November 30, 1978, listed $11,000 in loans to stockholders. For the fiscal years ending on November 30 of 1979, 1980 and 1981, the tax returns indicated loans to stockholders in excess of $111,000.00. For the fiscal year beginning December 1, 1981 and ending November 30, 1982, the tax returns indicated a beginning "loans to stockholders" balance of $112,148.00 and an ending balance of $0.00. This loan to stockholders was written off as a bad debt for bookkeeping purposes in 1981 and for tax purposes in 1982. There is no indication that the corporation ever made any attempt to collect this debt from the stockholder doctors.
Additionally, Messick contends that thousands of dollars were diverted to a Merrill Lynch account and that Moring and Drane failed to produce records showing the disposition of these funds. Moring and Drane claim that they are no longer in possession of these records, even though the tax return for the fiscal year that ended on November 30, 1985, shows a balance of $29,022.97 in the Merrill Lynch account and this request was made just three months later in February 1986.
Under the foregoing facts, the issue before us on appeal is, assuming the allegations are true, could a jury have found the corporations to be instrumentalities or alter egos of the doctors and thereby imposed personal liability on Moring and Drane?
In Moore Handley Hardware Co. v. Towers HardwareCo., 87 Ala. 206, 210, 6 So. 41, 43 (1889), we recognized that "a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it." In certain situations the corporate entity will be disregarded and limited stockholder liability will be denied. The following factors are commonly used as justification for "piercing the corporate veil" and imposing personal liability on shareholders or imposing liability on a controlling corporation: 1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; 3) operation of the corporation as an instrumentality or alter ego. Piercing the Corporate Veilin Alabama: In Search of a Standard, 35 Ala.L.Rev. 311 (1984).
Initially, we note that it is under the third theory that Messick contends that the corporate entity should be disregarded. Alabama law has recognized that in proper situations, when the corporate form is being used to evade personal responsibility, the corporate form will be disregarded and liability will be imposed on the person controlling the corporation and subverting it to his personal use by the conduct of its business in a manner to make it merely his instrumentality. Cohen v. Williams,294 Ala. 417, 318 So.2d 279 (1975). Although the limitation of personal liability is a valid corporate attribute, the corporate entity will be disregarded when it is used solely to avoid a personal liability of the owner while reserving to the owner the benefits gained through use of the corporate name. Bon Secour Fisheries, Inc. v. Barrentine,408 So.2d 490 (Ala. 1981) (citing Woods v. CommercialContractors, Inc., 384 So.2d 1076 (Ala. 1980)). The theory of separate corporate existence can properly be discarded, even in the absence of fraud or illegality, to prevent injustice or inequitable consequences. Cohen,supra.
In an attempt to circumvent some of the difficulties in applying conclusory terms such as "instrumentality," "alter ego" and "adjunct," we announced, in Kwick SetComponents, Inc. v. Davidson Ind., Inc., 411 So.2d 134
(Ala. 1982), a standard to be applied in order to determine whether the corporate entity should be disregarded when excessive control is the ground. While acknowledging that the dominating party may be an individual or another corporation, we stated the elements essential for imposition of liability on the dominant party as follows:
 1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own; *Page 895 
 2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
 3) The misuse of this control must proximately cause the harm or unjust loss complained of.
Lowendahl v. Baltimore O. Ry., 247 A.D. 144,287 N YS. 62 (1936).
The mere fact that a party owns a majority or all of the corporation's stock does not, of itself, destroy the corporate identity, but it is a factor to be considered in determining the control of the corporation. Kwick SetComponents, supra.
Moring and Drane assert that they faithfully followed corporate formalities and that none of the corporate transactions was illegal. In support of this contention, Moring and Drane direct our attention to the fact that out of nearly 2000 pages of corporate records, Messick questions only two transactions. While it is not necessary to prove illegality in order to establish excessive control, it is essential that complete control and domination be proven. These two transactions fail to establish that Moring and Drane misused their control of the corporations.
After thoroughly reviewing the record before us on appeal, we agree with the trial court that Moring and Drane have precluded the possibility, as a matter of law, that Messick might establish his allegations. We are convinced that no genuine issues of material fact exist sufficient to raise an inference in support of Messick's claim; therefore, the trial court properly granted the motion for summary judgment, and the judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.