The Courtland Regional Medical Center, Inc., d/b/a Community Hospital of Courtland in Courtland, Alabama, came into existence *Page 1332 
in 1975. In 1982, Dr. Harold L. Blanton entered into an agreement to provide medical services to the Community Hospital of Courtland. The hospital was later purchased by Nu-Med Hospital Corporation. In 1986, First Health Courtland, Inc., purchased all of the stock in the hospital from Nu-Med. Thereafter, First Health Courtland, Inc., became delinquent in paying wages to the staff physicians of Community Hospital of Courtland. This condition persisted until Dr. Blanton and the Community Hospital of Courtland entered into an agreement by which the hospital would pay Dr. Blanton the debt it owed him. First Health Courtland, Inc., made one scheduled payment to Dr. Blanton before filing for bankruptcy. It made no further payments to Dr. Blanton.
First Health, Inc., a Delaware corporation, owns 100% of the stock in First Health Courtland, Inc., which is incorporated in Alabama. One half of the stock in First Health, Inc., is owned by David Vance, and one half of its stock is owned by Robert H. Gladney.
Dr. Blanton filed an action against First Health Courtland, Inc., First Health, Inc., and David Vance to recover the unpaid balance of the debt owed to him by First Health Courtland. The case was tried to the court sitting without a jury. The trial court entered a judgment for Dr. Blanton and against First Health Courtland, Inc., and First Health, Inc., in the amount of $18,080 plus interest from April 1, 1988. First Health, Inc., appeals.
First Health, Inc., argues that the trial court erroneously disregarded the corporate entity of First Health Courtland and held First Health, Inc., liable for First Health Courtland's debt.
Where testimony is presented ore tenus, the trial court's findings are presumed correct and will not be disturbed unless palpably erroneous, without supporting evidence, or manifestly unjust. Howell v. Bradford, 570 So.2d 643 (Ala. 1990). The evidence, viewed in the light most favorable to the plaintiff, is as follows:
First Health owns stock in health facilities in Alabama, Mississippi, and Tennessee. The board of directors for both First Health and First Health Courtland consisted of David Vance, Robert Gladney, and Harry Baker. When First Health Courtland purchased the Community Hospital of Courtland, David Vance met with the hospital physicians, including Dr. Blanton, and he told them that the hospital would be run as it had been run before First Health Courtland purchased it.
All parties abided by the terms of the 1982 agreement until 1986. At that time, economic conditions worsened for the Community Hospital of Courtland, and First Health Courtland failed to pay Dr. Blanton and the other staff physicians for their services. Dr. Blanton testified that he discussed this deficiency with Carl Velte, the administrator of the Community Hospital of Courtland, and that he wrote to the directors of First Health in Batesville, Mississippi, concerning the overdue wages. The letter was addressed to the directors of First Health in their capacities as directors of the corporation.
Dr. Blanton testified that in the spring of 1987 the staff physicians agreed with Velte to reduce their emergency room hourly rate from $30 to $20. Dr. Blanton stated that Velte said that he had discussed the rate reduction plan with Vance in the "home office." Dr. Blanton said he was paid in accordance with that agreement until September 1987. Dr. Blanton stated that September 1987 began a four-month period during which he was not paid for his services. He testified that he spoke with Velte about this condition and that he wrote several letters to David Vance and the other directors of First Health concerning the delinquent payments.
Dr. Blanton next wrote to the directors of First Health concerning the payment of overdue wages in March and April 1987; he addressed the letter to the offices of First Health in Mississippi. He testified that the overdue wages were paid shortly thereafter.
Dr. Blanton again wrote Vance in December 1987. In that letter, he stated that, due to the hospital's inability to timely compensate its physicians, he intended to cease *Page 1333 
his employment at the Community Hospital of Courtland. Dr. Blanton wrote another letter to Vance in January 1988 that concerned the payment of past-due wages. On the same day, Dr. Blanton sent a letter to Lawson Woods, Velte's successor as administrator of the Community Hospital of Courtland. In the letter, Dr. Blanton asked Woods, "as a representative of the First Health Corporation," to arrange payment for past-due wages. In March 1988, Dr. Blanton again wrote Vance concerning payment of the same overdue wages.
Subsequently, Dr. Blanton entered into an agreement with the Community Hospital of Courtland whereby the hospital would pay him $1,000 per month until it had satisfied its debt, which was then $19,080. The agreement was typed on "Community Hospital of Courtland" stationery. It was signed by Dr. Blanton and by Lawson Woods in his capacity as the administrator of the hospital. On April 6, 1988, First Health Courtland drew a check for $1,000 made payable to Dr. Blanton, on its account at the Citizens Bank of Courtland, Alabama. First Health Courtland made no more payments to Dr. Blanton. It is not disputed that First Health Courtland owes Dr. Blanton $18,080.
Dr. Blanton testified that he did not know of, and did not attend, any First Health Courtland directors' meetings. He said that any discussions he had concerning the payment of past-due wages were with David Vance. He testified that decisions to pay him and decisions to buy hospital equipment were made by the hospital administrator through David Vance. Dr. Blanton testified that, other than Vance, he reported to Velte, in his capacity as administrator of the Community Hospital of Courtland, and to Lawson Woods, Velte's successor. Dr. Blanton testified that the hospital billed patients for medical services and that it collected payments for medical services. Dr. Blanton stated that any payments he received for services were paid by the Community Hospital of Courtland.
Next, Bonnie Blanton, Dr. Blanton's wife and a registered nurse at the hospital, testified. Ms. Blanton stated that, even though she was paid by First Health Courtland, on the days the hospital payroll checks were to be issued, the employees would sometimes have to wait because the payroll money would have to come from Mississippi. Ms. Blanton also said that the procedure for ordering hospital supplies was to fill out a request form and turn it in to the purchasing office at the hospital, and that it then went to the hospital administrator. She stated, however, that she was told that approval for nondisposable supplies had to come from the offices of First Health.
David Vance testified that First Health, First Health Courtland, and the other health care corporations whose stock was owned by First Health, were separately incorporated, some in different states, and that they maintained separate bank accounts, separate state tax returns, separate board meetings, and separate corporate minutes. He stated that the directors for First Health and First Health Courtland were the same. Vance said that, pursuant to Internal Revenue Service regulations, the two corporations filed a consolidated federal tax return form.
Vance stated that, as to the procedure for ordering hospital supplies, the day-to-day operation of the hospital was charged to the administrator, who submitted an administrator's report to the board of directors of First Health Courtland. He said that it was the responsibility of the administrator to order and purchase disposable supplies. At the beginning of each year, Vance said, the administrator had to submit a capital expenditure budget projection for the upcoming year. He stated that before equipment could be purchased, the administrator was required to demonstrate by a capital expenditure summary that it was financially feasible to purchase the equipment. Vance said that any equipment to be purchased in addition to the items of expenditure listed in the projected budget "were routed to us in Batesville for a decision."
Vance testified that he never told Dr. Blanton that he would receive payment for services from anywhere other than First Health Courtland. He said that the only *Page 1334 
time First Health became involved in any payment to First Health Courtland was in the spring of 1987; at that time, First Health obtained a loan to provide working capital for its subsidiaries. Vance said the loan was funded to First Health and "downstreamed to the subsidiaries." Vance testified that when a subsidiary corporation required capital to meet its payroll, another subsidiary might make an intercorporate transfer. However, he said that the transfers were not gifts and that the transferee corporation would be held accountable to the transferor corporation for the amount of the transfer. Vance stated that the money generated by the staff physicians at the Community Hospital of Courtland was deposited into the First Health Courtland account at the Citizens Bank of Courtland, and that funds generated by the hospital in Courtland were never transferred to First Health, save on one occasion when the hospital in Courtland was able to make an intercorporate transfer to First Health.
First Health does not dispute that First Health Courtland owes Dr. Blanton past-due wages. First Health argues only that it was error to disregard the corporate entity of First Health Courtland and to impose on First Health the liability of First Health Courtland, that is, to "pierce the corporate veil" of First Health Courtland. First Health states that, to pierce the corporate veil of First Health Courtland, Dr. Blanton must plead and prove 1) that First Health completely dominated the finances, policies, and business practices of First Health Courtland, 2) that First Health misused its control of First Health Courtland, and 3) that the misuse proximately caused Dr. Blanton's loss. First Health argues that Dr. Blanton failed to prove the first element and that he presented no proof of the second and third elements.
Piercing the corporate veil is not a power that is lightly exercised. The concept that a corporation is a legal entity existing separately from its shareholders is well settled in Alabama. Co-Ex Plastics, Inc. v. Alapak, Inc., 536 So.2d 37
(Ala. 1988); Alorna Coat Corp. v. Behr, 408 So.2d 496 (Ala. 1981). The mere fact that an individual or another corporation owns all or a majority of the stock of a corporation does not, of itself, destroy the separate corporate entity. Messick v.Moring, 514 So.2d 892 (Ala. 1987); Forester Jerue, Inc. v.Daniels, 409 So.2d 830 (Ala. 1982).
In certain situations, however, the corporate entity will be disregarded and limited stockholder liability will be denied. In Messick v. Moring, 514 So.2d at 894, citing Piercing theCorporate Veil in Alabama: In Search of a Standard, 35 Ala.L.Rev. 311 (1984), this Court stated the following factors as typical justification for piercing the corporate veil: 1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; or 3) operation of the corporation as an instrumentality or alter ego.
In this case, as in Messick, it is under the third theory that Dr. Blanton contends that the corporate entity should be disregarded. In Messick, we enunciated the standard to be applied to determine whether to disregard the corporate entity when the third theory is espoused:
 "In an attempt to circumvent some of the difficulties in applying conclusory terms such as 'instrumentality,' 'alter ego' and 'adjunct,' we announced, in Kwick Set Components, Inc. v. Davidson Ind., Inc., 411 So.2d 134 (Ala. 1982), a standard to be applied in order to determine whether the corporate entity should be disregarded when excessive control is the ground. While acknowledging that the dominating party may be an individual or another corporation, we stated the elements essential for imposition of liability on the dominant party as follows:
 "1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or existence of its own;
 "2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or *Page 1335 
other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
 "3) The misuse of this control must proximately cause the harm or unjust loss complained of.
 Lowendahl v. Baltimore O. Ry., 247 A.D. 144, 287 N.Y.S. 62 (1936)."
514 So.2d at 894-95.
The trial court held that Dr. Blanton should be allowed to disregard the corporate entity of First Health Courtland. Its order states in pertinent part:
 "The Court finds that although in form Courtland Community Hospital was run by First Health Courtland, Inc., in practice decisions and control flowed from First Health, Inc. This Court holds that First Health, Inc., benefited from services performed by the Plaintiff, Dr. Harold L. Blanton, in running the Courtland Community Hospital, and First Health, Inc., derived benefits from the fruit of labor performed by Dr. Harold L. Blanton and is therefore obligated to pay the Plaintiff, Dr. Harold L. Blanton, the sum of [$18,080.00], together with interest from April 1, 1988."
Without commenting on the validity of First Health's first argument, that Dr. Blanton did not prove that First Health completely controlled and dominated the finances, policies, and business practices of First Health Courtland, we address its second argument, that Dr. Blanton did not present any proof that First Health misused its control, if any, of First Health Courtland or that the misuse of control proximately caused the unjust loss complained of by Dr. Blanton. Because we hold First Health's second argument to be meritorious, it is dispositive of this case.
As stated, First Health argues that Dr. Blanton presented no evidence that First Health misused its control or that such a misuse proximately caused Dr. Blanton's loss. We note that the trial court's order holds only that First Health controlled First Health Courtland and that it benefited from the services performed by the employees of First Health Courtland.[1] Having read the brief of Dr. Blanton and having thoroughly reviewed the trial court's findings, giving them the appropriate presumption of correctness, this Court does not find any
evidence tending to prove that First Health misused its control, if any, of First Health Courtland, or that its misuse of control proximately caused Dr. Blanton's loss. Indeed, the only evidence relevant to this discussion tends to prove that First Health did not misuse its control of First Health Courtland.
Dr. Blanton stated numerous times, in his letters to David Vance and in his testimony at trial, that the staff physicians agreed to the interruptions in payments "due to the economic condition of the hospital." In his letter of 1987 to David Vance, Dr. Blanton stated that, since its inception, there was very little community interest in the Community Hospital of Courtland. In a January 1988 letter to Vance, in which Dr. Blanton asked for payment for past-due wages, Dr. Blanton stated:
 "Please help us if you can in this financial matter. I wish you well in all your future endeavors. In my mind, you and your corporation tried hard enough financially and otherwise to keep this hospital going. Circumstances beyond all of our control has dealt the stumbling blocks."
Mere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. Simmons v. ClarkEquipment Credit Corp., 554 So.2d 398 (Ala. 1989); Messick, supra. In the absence of any evidence that First Health misused its control, if any, of First Health Courtland, or that Dr. Blanton's loss resulted from a misuse of that control, the trial court, sitting without a jury, erred in disregarding the corporate entity of First Health Courtland. *Page 1336 
Cf. Simmons v. Clark Equipment Credit Corp., supra.
Based on the foregoing, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON and INGRAM, JJ., concur.
[1] Naturally, as a stockholder in First Health Courtland, First Health would wish to benefit from the services of the employees of the corporation in which it holds stock.