Great Coastal Express, Inc. ("Great Coastal"), appeals from a judgment of the Montgomery County Circuit Court in favor of Montgomery 76 Auto/Truck Plaza, Inc. ("the truck stop"), and its insurer/subrogee, Atlantic Mutual Companies ("Atlantic Mutual"), on the truck stop and Atlantic Mutual's claims of negligence and wantonness arising from a leak of diesel fuel from one of Great Coastal's trucks onto the premises of the truck stop. We affirm.
The truck stop and Atlantic Mutual sued Great Coastal, claiming that Great Coastal had negligently or wantonly failed to properly maintain diesel fuel it was hauling and that its negligence or wantonness had caused a fuel spill and a subsequent environmental cleanup on the premises of the truck stop. Great Coastal answered, denying the material allegations of the complaint and averring, among other things, an efficient intervening cause of the damage claimed by the truck stop and Atlantic Mutual. After an ore tenus proceeding, the trial court entered a judgment in favor of the truck stop and Atlantic Mutual, under which Atlantic Mutual was awarded $15,000 plus costs and the truck stop was awarded $9,060.22 plus costs. Great Coastal's postjudgment motion, which asserted the absence of any evidence of negligence or proximate causation on its part, was subsequently denied; Great Coastal appealed. *Page 968 
As Great Coastal acknowledges in its brief on appeal, the trial court's judgment is accorded a "strong presumption of correctness," a presumption our Supreme Court has discussed:
 "We note that under the ore tenus standard of review, the trial court's findings of fact based on oral testimony, and a judgment based on those findings, are given a presumption of correctness. A judgment based on such findings will not be reversed unless it is shown to be plainly and palpably wrong. The appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court's decision is supported by reasonable inferences to be drawn from the evidence. The reason for giving such deference to the trial judge's findings based on disputed evidence in ore tenus proceedings is that the trial judge has the benefit of observing the witnesses' manner and demeanor and has the better opportunity to pass upon the credibility of their testimony."
Ex parte Pielach, 681 So.2d 154, 154-55 (Ala. 1996) (citations omitted).
Moreover, we note that the trial court's judgment does not contain specific findings of fact. Under these circumstances, our review is governed by the following additional principles:
 "Because the trial judge made no specific findings of fact, this Court will assume that the trial judge made those findings necessary to support the judgment. Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness and will not be reversed unless found to be plainly and palpably wrong. The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment."
Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375,378 (Ala. 1992) (citations and internal quotation marks omitted). Finally, we note that "[i]n ore tenus proceedings the trial court is the sole judge of the facts" and "we are required to review the evidence in a light most favorable to the prevailing part[ies]," that is, in this case, the truck stop and Atlantic Mutual. Driver v. Hice, 618 So.2d 129,131 (Ala.Civ.App. 1993); see also First Health, Inc. v. Blanton,585 So.2d 1331, 1332 (Ala. 1991) (reviewing evidence in the light most favorable to the prevailing party where the trial court's judgment was entered after an ore tenus proceeding).
The record reveals the following facts. The truck stop is located on West South Boulevard in Montgomery, near Interstate Highway 65. On the evening of November 25, 1997, Great Coastal's truck number 5151, operated by Robert Dawkins, ran over a curb in Prattville; this caused the truck's diesel-fuel tank (which was located between 6 and 10 inches above the ground) to rupture. Despite the rupture, and although truck-service purveyors were located in Prattville, Dawkins drove 14 miles south to Montgomery and pulled the truck and its leaking fuel tank into the truck stop, parking on an asphalt driveway in front of the truck stop's service bay. Because the truck stop had experienced two previous fuel leaks on the asphalt driveway, resulting in between $40,000 and $55,000 in cleanup costs, employees of the truck stop directed Dawkins to move the truck onto a concrete "fuel island," and he did. Once the Great Coastal truck was parked on the fuel island, truck-stop employees began working to contain the diesel fuel spilling from the ruptured tank. However, before the fuel leak could be stopped by truck-stop employees and the Montgomery Fire Department, approximately 75 gallons of diesel fuel was emitted *Page 969 
from the ruptured tank. While the fuel remaining on the concrete surface was contained through the use of sand and a substance called "oil-dry," a large portion of the spilled fuel went down a drain entrance to an 8,000-gallon underground oil-water separator; this caused the separator to malfunction and necessitated the deactivation of submersible pumps so that the fuel would not be released into a drainage ditch.
After the fuel spill had been contained, state and federal environmental authorities were notified, and an industrial contractor was engaged to clean up the truck stop's underground oil-water separator. The cost of the tools and labor used in the disposal of the sand and "oil-dry," along with the cost of the industrial contractor's services and disposal of sludge from the separator, amounted to more than $25,000. Atlantic Mutual paid $15,000 on behalf of the truck stop toward those expenses, and Great Coastal agreed to pay, and did pay, $4,282 representing work done with respect to fuel spilled on the asphalt portion of the truck stop's premises; however, Great Coastal refused to pay the other expenses incurred as a result of the fuel spill.
The sole issue raised by Great Coastal is whether sufficient evidence of negligence was introduced to support a judgment in favor of the truck stop and Atlantic Mutual. Great Coastal asserts that "[b]ased on the testimony presented by [the truck stop] at trial, it is not clear what actions of Great Coastal's driver" are contended to be negligent, and that "no evidence was presented as to how the leak in" the truck's fuel tank occurred. However, while the 53 pages of transcribed testimony does not reveal the cause of the leak, and while Dawkins, the truck driver, did not testify, an exhibit admitted into evidence without objection (the truck stop's written report to the Alabama Department of Environmental Management concerning the incident) indicates that "the ruptured fuel tank was caused when the driver ran over a curb in Prattville, Alabama."
We note that under the doctrine of res ipsa loquitur, negligence may be inferred from the surrounding facts "in instances where the precise and exact cause of an injury is unknown or unknowable." Khirieh v. StateFarm Mut. Auto. Ins. Co., 594 So.2d 1220, 1223 (Ala. 1992). The elements of the doctrine are generally stated as (1) the defendant must have had full management and control of the instrumentality that caused the injury; (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent; and (3) the plaintiff's injury or harm must have resulted from the accident. Id.
In this case, it is undisputed that Great Coastal's employee had full management and control of the truck and that the injury to the truck stop's premises resulted[1] from the leaking fuel from the truck's fuel tank. Moreover, the trial court heard evidence indicating that the truck's fuel tank was between 6 and 10 inches above the ground, yet it was ruptured when the truck's driver ran over a curb that was *Page 970 
high enough to make sufficient contact with the tank with sufficient force to rupture the tank. The trial court could have concluded, from common knowledge, that contact between a curb of that height and the fuel tank of an otherwise-functional moving truck being operated by a professional truck driver does not take place in the absence of negligence on the part of the driver. Moreover, the trial court could have considered the evidence that Great Coastal paid for certain clean-up expenses directly flowing from the act causing the rupture as an admission of liability. See 2 Charles W. Gamble, McElroy'sAlabama Evidence § 188.05 (5th ed. 1996) (nothing in Rule 409, Ala.R.Evid., "disallows [evidence of] the payment of . . . expenses [other than medical, hospital, or similar expenses] arising out of an injury, even if offered as probative of underlying liability" (emphasis added)). Under these circumstances, the trial court could reasonably have inferred that negligence on the part of Dawkins, Great Coastal's employee, caused the damage to the truck stop (a finding necessary to support the trial court's judgment); therefore, we may not substitute our own judgment for that of the trial court. Pielach, 681 So.2d at 154.[2]
Based upon the foregoing facts and authorities, the trial court's judgment is due to be affirmed.
AFFIRMED.
YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in the result.
[1] Great Coastal has not asserted on appeal a lack of proximate cause; however, even if it had done so, Alabama law provides that a claimed subsequent cause of an injury must have been sufficient in and of itself to have been the sole "cause in fact" of the injury. GeneralMotors Co. v. Edwards, 482 So.2d 1176, 1195 (Ala. 1985). Had Dawkins's truck's fuel tank been intact when he was directed to move onto the "fuel island," no damage would have occurred to the truck stop's premises.
[2] Because the trial court's judgment is wholly proper under common-law negligence principles, we do not reach the question of Great Coastal's possible liability under the "cradle-to-grave" responsibility concept embodied in the Resource Conservation and Recovery Act ("RCRA"),42 U.S.C. § 6901 et seq., cited by Great Coastal.