812 So.2d 1269 (2001)
John GILBERT and Lori Gilbert
v.
JAMES RUSSELL MOTORS, INC.
2000434.
Court of Civil Appeals of Alabama.
September 14, 2001.
*1271 F. Luke Coley, Jr., Mobile, for appellants.
Daniel L. McCleave of McCleave & Denson, L.L.C., Mobile, for appellee.
THOMPSON, Judge.
James Russell Motors, Inc. ("JRM"), sued G & W Auto Sales, Inc. ("G & W"),[1] and John Gilbert and his wife Lori Gilbert, who were shareholders of G & W. In its complaint, JRM stated claims alleging breach of contract, conversion, and fraud; it sought to pierce G & W's corporate veil and impose on the Gilberts personal liability for G & W's debt to JRM. The case was submitted to the trial court on briefs. On November 13, 2000, the trial court entered a judgment that pierced the corporate veil, held the Gilberts both liable for the actions of the corporation, and awarded JRM monetary damages. The Gilberts appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
The Gilberts argue that the trial court erred in piercing G & W's corporate veil and in holding them personally liable for the actions of G & W. This case was submitted on briefs to the trial court, and the trial court did not hear ore tenus evidence. Where the facts of the case are undisputed and the trial court is called upon to determine a question of law, no presumption of correctness attaches to the trial court's ruling and this court's review is de novo. Tate v. Kennedy, 578 So.2d 1079 (Ala.1991).
In December 1997, the Gilberts and Lee Wood (hereinafter "Wood") formed G & W. G & W was established to buy and sell used automobiles. Wood contributed his experience in the automobile trade; Wood had exclusive responsibility for buying and selling the used automobiles. The Gilberts contributed $22,000 in initial capital, and they later contributed an additional $3,600 to G & W to pay certain taxes.
Wood obtained dealer and business licenses for G & W, and he began buying and selling automobiles. Lori Gilbert and Lee Wood obtained a surety bond for the business. G & W applied for a federal tax-identification number. The Gilberts opened two business bank accounts in the name "G & W Auto Brokers." G & W used one account for its regular business operations and the other account for a tax account. After all of these actions were taken, the Gilberts contacted an attorney about incorporating the business.
On February 4, 1998, the Gilberts and Wood executed articles of incorporation, which were prepared for them by an attorney. The articles of incorporation named Lori Gilbert, John Gilbert, and Wood as the incorporators of G & W. On February 5, 1998, the Gilberts and Wood filed G & W's articles of incorporation in the Mobile County Probate Court, thereby forming G *1272 & W Auto Brokers, Inc., a close corporation. See § 10-2A-300 through -313, Ala. Code 1975. Initially, 1,000 shares of common stock were issued: 500 shares were jointly held by Lori Gilbert and John Gilbert, and 500 shares were jointly held by Wood and his wife, Michelle Wood. G & W's articles of incorporation named Lori Gilbert as the corporation's initial registered agent.
On February 5, 1998, the date of G & W's incorporation, the shareholders held a corporate meeting, at which they adopted bylaws and elected officers. The minutes of the first shareholders' meeting indicate that stockholder certificates were delivered to G & W's shareholders. G & W's corporate minutes further reflect that the shareholders elected John Gilbert as president, Wood as vice president, Lori Gilbert as treasurer, and Michelle Wood as secretary. Wood testified that G & W held meetings approximately every week and that Michelle Wood duly recorded the minutes of those meetings. The parties did not submit the minutes of the G & W meetings to the trial court. Wood testified that those minutes were unavailable because he had disposed of all documents pertaining to G & W that had been in his possession.
On or about April 29, 1998, Wood, on behalf of G & W, took possession of three motor vehicles from James Bottler, who was acting for Steve Dyas Autoshine, Inc., the predecessor to JRM. Steve Dyas Autoshine also "detailed" two additional automobiles for G & W; it charged $75.00 for each automobile for that work. The total amount of G & W's April 29, 1998, transaction with Steve Dyas Autoshine was $24,275. G & W satisfied $7,600 of that amount. A balance remained of $16,675; that balance is the basis of this litigation.
Wood testified at his deposition that the Gilberts were not aware of the transactions between G & W and Steve Dyas Autoshine. Wood had accepted the three automobiles from Steve Dyas Autoshine and had sold the automobiles to individuals; Wood did not pay Steve Dyas Autoshine for the three automobiles. It does not appear that Wood actually deposited the money he received for the sale of those automobiles into either of G & W's bank accounts. Wood's testimony further indicates that on more than one occasion, Wood took money from G & W without the Gilberts' knowledge. In doing so, Wood accepted cash for automobiles he sold from G & W's stock, but he did not deposit that money into either of G & W's bank accounts. Wood also admitted that he lied to the Gilberts about transactions that did not actually take place. Wood and Michelle Wood resigned as officers of G & W on May 11, 1998.
James Bottler, the owner and operator of JRM, testified by affidavit that in December 1997, he began doing business with Wood, who was acting on behalf of G & W. Bottler stated that at the time he began doing business with G & W, Wood explained that he and the Gilberts were forming G & W Auto Brokers. Bottler testified that he understood G & W to be a partnership or unincorporated association. Bottler testified that when he engaged in a business transaction with G & W, he dealt only with Wood; Bottler stated that he never met the Gilberts.
The Gilberts and Wood incorporated G & W in February 1998. Thus, G & W and JRM began transacting business before G & W was incorporated; however, G & W was incorporated before the April 29, 1998, transaction that is at issue in this action. Wood testified by deposition that he told Bottler sometime after the April 29, 1999, transaction that is the basis of this dispute, that G & W was incorporated.
*1273 A corporation is a legal entity that exists separate from its shareholders, and its actions and obligations are to be considered separately from those of its shareholders. Wright v. Alan Mills, Inc., 567 So.2d 1318 (Ala.1990). The corporate structure is intended to protect shareholders and officers from liability arising from the operation of the corporation. Messick v. Moring, 514 So.2d 892, 894 (Ala.1987). The ability to pierce a corporate veil and impose personal liability on the corporation's shareholders arises from an equitable doctrine and "`furnishes a means for a complainant to reach ... [an] individual upon a cause of action that otherwise would have existed only against the ... corporation.' 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (perm. ed. rev.vol. 1999)." Ex parte Thorn, 788 So.2d 140, 145 (Ala.2000). Piercing the corporate veil to impose personal liability on a corporation's shareholder is not a power that is exercised lightly. First Health, Inc. v. Blanton, 585 So.2d 1331, 1334 (Ala.1991).
We note that, in a separate action, the trial court entered a default judgment against Wood with regard to the April transactions. In entering that judgment, the court pierced G & W's corporate veil and imposed personal liability on Wood for G & W's debt to JRM. Wood did not challenge that default judgment. We note, however, that "the corporate identity may not be disregarded unless the individual sought to be charged with the corporation's liability has used the corporate identity as his alter ego." Chenault v. Jamison, 578 So.2d 1059, 1061 (Ala.1991) (emphasis added). See also Cohen v. Williams, 294 Ala. 417, 420, 318 So.2d 279 (1975) ("In a proper case, when the corporate form is being used to evade personal responsibility, this court has not been hesitant to disregard the corporate form and impose liability on the person controlling the corporation and subverting it to his personal use by the conduct of its business in a manner to make it merely his instrumentality."). Thus, the fact that the corporate identity was disregarded as to Wood does not dictate that it must be disregarded as to the Gilberts.
The Alabama Supreme Court has set out the following extraordinary circumstances in which it would be appropriate to pierce the corporate veil: 1) where the corporation is inadequately capitalized; 2) where the corporation is conceived or operated for a fraudulent purpose; or 3) where the corporation is operated as an instrumentality or alter ego of an individual or entity with corporate control. First Health, Inc. v. Blanton, 585 So.2d at 1334 (citing Messick v. Moring, 514 So.2d 892, 894 (Ala. 1987)). See also M & M Wholesale Florist, Inc. v. Emmons, 600 So.2d 998 (Ala. 1992). In its trial brief, JRM failed to address these elements.
JRM has not alleged that G & W was inadequately capitalized. See First Health, Inc. v. Blanton, supra. No evidence in the record indicates that the amounts invested in G & W were inadequate for the purposes of operating the business. Therefore, we cannot say that the record contains evidence that would support a conclusion that G & W was inadequately capitalized, or that it contains evidence that would support piercing G & W's corporate veil on that basis.
The Gilberts argue that the record contains no evidence indicating that G & W was a "sham" corporation; they also argue that JRM presented no evidence of fraud on their part. G & W was created to buy and sell. The evidence suggests that G & W did in fact buy used automobiles and sell them to various businesses and individuals, including JRM. JRM argued to the trial court that G & W was *1274 created for a fraudulent purpose, namely to protect the Gilberts from liability that might arise from wrongful acts by Wood. However, the use of the corporate form to shield shareholders from personal liability is not a fraudulent purpose. In the absence of fraud, the corporate structure protects an individual from liability for the actions of the corporation. Wright v. Alan Mills, Inc., 567 So.2d 1318 (Ala.1990). A legitimate primary purpose of any corporation is to limit the liability of its shareholders. M & M Wholesale Florist, Inc. v. Emmons, 600 So.2d at 999 (citing Chenault v. Jamison, 578 So.2d 1059, 1061 (Ala.1991)). See also Messick v. Moring, 514 So.2d at 894 ("the limitation of personal liability is a valid corporate attribute"). JRM presented no evidence indicating that the Gilberts engaged in any fraudulent conduct. We agree that JRM presented no evidence to support a conclusion that the Gilberts had a fraudulent purpose in their conception of, or in their operation of, G & W. See First Health, Inc. v. Blanton, supra.
JRM also argued to the trial court that G & W did not comply with corporate formalities required by the Alabama Business Corporation Act, § 10-2B-1.01 et seq., Ala.Code 1975. The evidence indicates without dispute that G & W was operated in accordance with its stated purpose, that of buying and selling used automobiles. In addition, the record contains evidence indicating that G & W was formed and registered in compliance with the provisions of the Alabama Business Corporation Act; that articles of incorporation and bylaws were adopted; that officers were elected; that common stock was issued; that corporate meetings were held; and that corporate records were maintained. The trial court received into evidence G & W's articles of incorporation, its bylaws, minutes of the initial shareholders meeting, bank-account records, tax records, and employment-withholding records. No minutes of corporate meetings were presented to the trial court. Wood testified in his deposition that minutes were kept of the weekly board meetings but that he disposed of those minutes and all other G & W records in his possession when he opened his own business. Our supreme court has affirmed a judgment refusing to pierce a corporate veil even though the shareholders had failed to comply with all corporate formalities. See Backus v. Watson, 619 So.2d 1342 (Ala.1993). Our review of the documents presented in this case suggest that G & W substantially met the requirements of a corporate entity.
We cannot say the evidence regarding G & W's compliance with corporate formalities is sufficient to demonstrate that the Gilberts operated G & W as a "sham" corporation, or that the evidence supports a conclusion that G & W's corporate veil should be pierced on this basis.
The Gilberts also argue that they did not operate G & W as an alter ego or instrumentality of themselves. See First Health, Inc. v. Blanton, supra. In order to prove that G & W was an alter ego or instrumentality of the Gilberts, JRM would have to present evidence indicating 1) that the Gilberts had complete control and domination of G & W's finances, policy, and business practices, so that at the time of the challenged transaction G & W had no separate mind, will, or existence of its own; 2) that the Gilberts misused that control; and 3) that the Gilberts' misuse of that control was the proximate cause of harm or unjust loss to JRM. Messick v. Moring, 514 So.2d 892, 894-95 (Ala.1987).
JRM presented evidence indicating that it dealt only with Wood when it engaged in business with G & W. The Gilberts and *1275 Wood testified that Wood conducted the day-to-day operations of G & W. The evidence in the record indicates that, by having sole check-writing authority, the Gilberts controlled only the expenditures from G & W's bank accounts; the record indicates that Wood made many, if not all, of the deposits into G & W's bank accounts. No evidence indicates that the Gilberts knew of Wood's inappropriate activities with regard to the business or that they condoned those activities. The evidence in the record does not support a conclusion that the Gilberts had complete control of G & W, that they misused any control that they did have, or that any misuse they allegedly exerted proximately caused harm to JRM. See First Health, Inc. v. Blanton, supra; Messick v. Moring, supra. We cannot say that the record contains evidence that would support a piercing G & W's corporate veil for that reason.
In Simmons v. Clark Equipment Credit Corp., 554 So.2d 398 (Ala.1989), the trial court entered a summary judgment that permitted the piercing of a corporate veil. In reviewing that summary judgment, this court stated:
"The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where the corporate and personal funds are intermingled and the corporate funds are used for personal purposes, or where an individual drains funds from the corporation."
Simmons v. Clark Equip. Credit Corp., 554 So.2d at 401. In that case, the supreme court concluded that, given the factors set out above, no evidence supported a finding that the corporate veil should be pierced. The supreme court reversed the summary judgment, stating that "[i]n the absence of undisputed evidence that some or all of these factors existed, the trial court could not conclude that there was no genuine issue of fact and that piercing the corporate veil was required as a matter of law." Simmons v. Clark Equip. Credit Corp., 554 So.2d at 401.
Similarly, in this case, JRM presented no evidence indicating that the Gilberts established G & W as a subterfuge or as a "sham" corporation; that G & W had failed to comply with corporate formalities; that the Gilberts had intermingled corporate and personal funds; that the Gilberts had used corporate funds for personal purposes; or that either of the Gilberts had drained any funds from the corporation. See Simmons v. Clark Equip. Credit Corp., supra. See also Econ Mktg., Inc. v. Leisure Am. Resorts, Inc., 664 So.2d 869, 870 (Ala.1994); Ramko, Inc. v. Lander, 707 So.2d 645, 646-47 (Ala.Civ.App.1997).
We agree with the Gilberts that the evidence in the record is not sufficient to support an order piercing the corporate veil so as to impose personal liability on the Gilberts. We therefore conclude that the trial court erred in imposing personal liability on the Gilberts for G & W's corporate debt to JRM. We must reverse the judgment of the trial court.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
NOTES
[1] G & W Auto Sales, Inc., is also referred to in the record and in the corporate documents submitted into evidence as G & W Auto Brokers, Inc.