Dallas G. Duff appeals from a summary judgment granted to Southern Railway Company (hereinafter "Southern"). We reverse.
Duff filed this action against Southern under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51-60, to recover for injuries he allegedly suffered during the course of his employment. Lenoir Car Works, Inc. ("Lenoir"), a now defunct subsidiary of Southern, manufactured several products, including insulated glued joints, traction bearings, journal bearings, and other devices. Because only railroads are subject to FELA liability, 45 U.S.C. § 51, Duff contends that Lenoir was the alter ego, adjunct, or instrumentality of Southern, and that Duff was therefore an employee of Southern. Southern moved for summary judgment upon the basis that Duff was not its employee. The sole question is: Does a genuine issue of fact exist with respect to this contention? In support of its motion for summary judgment, Southern offered the affidavit of L.R. Garner, an employee and officer of Southern and manager of Lenoir. Southern also relied strongly on the case of Garrett v.Southern Ry. Co., 278 F.2d 424 (6th Cir. 1960), aff'g,173 F. Supp. 915 (E.D.Tenn. 1959), which was cited in the order granting summary judgment. In opposition to the motion for summary judgment, Duff offered the deposition of L.R. Garner and argued that the facts in the present case differ substantially from those in Garrett, thus distinguishing the present case from Garrett.
The Garrett case considered the relationship of Southern and Lenoir and the operations of Lenoir as it existed in 1960. There, the plaintiff, a wheel moulder working at Lenoir, filed an action under the FELA against Southern for alleged injuries from silicosis. The issue in Garrett, as in the present case, was whether Southern so completely dominated Lenoir that Lenoir was but an adjunct or instrumentality of Southern. The trial court entered judgment in favor of Southern, finding that *Page 762 
Southern exercised no such control over Lenoir as to make Southern the employer of the moulder. The United States Court of Appeals for the 6th Circuit affirmed. Numerous factors were cited by the trial court in support of its finding, including the following: (1) that there was no evidence that Southern dictated the management of Lenoir, although it owned the entire capital stock of Lenoir; (2) that an individual, Henry Marius, was in full control of the operation of the car works, establishing prices and handling all negotiations and collective bargaining agreements; and (3) that Lenoir sold substantial quantities of its product to companies other than Southern.
Duff argues that the following changes in the relationship between Lenoir and Southern since the Garrett decision caused Lenoir to become an adjunct or instrumentality of Southern. First, during the 15-year period prior to the Garrett suit, Lenoir sold 12% of its products to customers other than Southern; however, Garner testified, in the present case, that Southern was the purchaser of more than 99% of Lenoir's production. Second, at the time of the Garrett case, Lenoir's manager was paid by Lenoir and, although he held and voted Southern's proxy at Lenoir's stockholders' meeting, he had no other connection with Southern. At the time of the present case, Garner was an employee and officer of Southern, was paid by Southern, and was the manager of Lenoir. He supervised Duff at Lenoir and was in charge of the hiring and firing at Lenoir. Third, in 1960, no individual had ever served as a director of Lenoir and Southern at the same time. In the present case, Duff contends that Garner is an employee and director of Southern (Southern contends that he is only an officer) and also a director of Lenoir. Fourth, the Garrett court found that, in the 20 years preceding the suit, no official or supervisor of Southern had been in a position to direct or supervise the operation of Lenoir's business. At the time of the present case, Garner supervised and directed Lenoir's entire operation. Furthermore, Garner testified that representatives of Southern came to the Lenoir plant to inspect and monitor certain environmental conditions, including air and blood lead levels. As a result of this monitoring, Garner was directed to make certain changes for improved respiratory protection of the workers.
The record also establishes that Southern owned all of the stock of Lenoir; that Duff's W-2 forms show Duff to be an employee of Southern; that Duff's 1980 income tax return showed income from railroad unemployment insurance under the Railroad Retirement Board Act, and that his 1982 return showed supplemental sickness benefits from Provident Life Insurance Company. These supplemental benefits were not workmen's compensation benefits; Provident Life Insurance Company was not Lenoir's workmen's compensation carrier. Duff argues that these factors, taken in conjunction with the above mentioned changes in Lenoir's and Southern's relationship since 1960, present a genuine issue of material fact as to whether Lenoir was an instrumentality of Southern at the time of Duff's alleged injuries.
This Court has said that a parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation. Baker v. Hospital Corporation of America,432 So.2d 1281 (Ala. 1983). Furthermore, where one corporation controls and dominates another corporation to the extent that the second corporation becomes the mere instrumentality of the first, the dominant corporation becomes liable for those debts or torts of the subservient corporation attributable to an abuse of that control. Kwick Set Components, Inc. v. DavidsonIndustries, Inc., 411 So.2d 134 (Ala. 1982). In considering the indicia of control, courts have quoted at length §§ 5 and 6 of Powell on Parent and Subsidiary Corporations: *Page 763 
 "So far as the question of control alone is concerned, the parent corporation will be responsible for the obligations of its subsidiary when its control has been exercised to such a degree that the subsidiary has become its mere instrumentality.
 "The Instrumentality Rule is recognized in all jurisdictions in this country and our problem therefore is to determine the circumstances which render the subsidiary an `instrumentality' within the meaning of the decisions. This is primarily a question of fact and of degree.
 "The circumstances rendering the subsidiary an instrumentality. It is manifestly impossible to catalogue the infinite variations of fact that can arise but there are certain common circumstances which are important and which, if present in the proper combination, are controlling. These are as follows:
 "(a) The parent corporation owns all or most of the capital stock of the subsidiary.
 "(b) The parent and subsidiary corporations have common directors or officers.
 "(c) The parent corporation finances the subsidiary.
 "(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.
"(e) The subsidiary has grossly inadequate capital.
 "(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.
 "(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.
 "(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.
 "(i) The parent corporation uses the property of the subsidiary as its own.
 "(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.
 "(k) The formal legal requirements of the subsidiary are not observed."
Taylor v. Standard Gas Electric Co., 96 F.2d 693, 704-05
(10th Cir. 1938); see also Baker v. Raymond Int'l, Inc.,656 F.2d 173 (5th Cir. 1981); Garrett v. Southern Ry., 173 F. Supp. 915
(E.D.Tenn. 1959).
No one of these factors is dispositive; nor does the list exhaust the relevant factors. Baker, supra. In Garrett, the court found that only two of the eleven listed indicia were present. In the present case, there is evidence of at least four, possibly five, of the listed indicia; namely, (1) that Southern owned all the stock in Lenoir; (2) that Garner was an officer of Southern and a director of Lenoir; (3) that Southern paid the salaries of Lenoir's workers; (4) that over 99% of Lenoir's business was with Southern; and (5) that Garner, a director of Lenoir, may not have acted independently from Southern. Furthermore, as previously mentioned, there was evidence of other relevant factors on the issue of control.
Where there is a scintilla of evidence in support of a cognizable theory advanced by the non-moving party, the trial court must deny the motion for summary judgment and allow the factual question to go to the jury. Griffin v. Little,451 So.2d 284 (Ala. 1984). After reviewing the evidence offered in support of, and that offered in opposition to, the summary judgment motion, we are convinced that genuine issues of fact exist which preclude summary judgment. See Rule 56 (c), Ala.R.Civ.P.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur. *Page 764