These appeals, from summary judgments made final pursuant to Rule 54(b), A.R.Civ.P., involve four consolidated, but unrelated, medical malpractice cases. All four cases name,inter alia, Hospital Corporation of America ("HCA") as a defendant. Two of the cases (Nos. 85-1347 and 85-1348) name, inter alia, HCA Management Company, Inc. ("HMC"), a wholly owned subsidiary of HCA, as a defendant.
Because HCA is the only defendant in each case that does business in Mobile (the alleged negligence having occurred elsewhere), venue in the Mobile Circuit Court is dependent upon appellants' defeating HCA's motion for summary judgment, Rule 82, A.R.Civ.P. Therefore, as a consequence of its order dismissing HCA in each case, the trial court granted the defendants' several motions for transfer of venue.
We affirm the judgments as to HCA in cases numbered 85-1347 (Larrimore), 85-1348 (Anderson), and 85-1350 (Long), and uphold the order of transfer in each of these cases. We reverse the judgment as to HCA in case number 85-1349 (Black), and thus instruct the trial court to set aside its order of transfer in that case. We reverse the summary judgments in favor of HMC in cases numbered 85-1347 (Larrimore) and 85-1348 (Anderson), without prejudice to the rights of HMC to reassert its motions for summary judgment before the trial court to which these cases are transferred.
 STATEMENT OF THE CASES ON APPEAL
Because these appeals are unusual and complicated (made so primarily because of consolidation), a brief recitation of certain background facts (dealing essentially with the procedural posture of each case) may facilitate an understanding of our approach in resolving the issues.
Three hospitals, located in south Alabama, are involved.Larrimore and Anderson are based on alleged tortious acts at Monroe County Hospital in Monroeville.Long is a wrongful death claim involving Flowers Hospital in Dothan. Both the Monroe County hospital and the Dothan hospital are managed by HMC. Black involves L.V. Stabler Memorial Hospital in Greenville. All of this hospital's stock is owned by HCA.
On June 1, 1983, Gene Larrimore was admitted to Monroe County Hospital. He was given a prescription drug known as Desyrel, which later caused him to develop priapism, a persistent, abnormal erection of the penis without sexual desire. Mr. Larrimore's condition required surgical intervention. He commenced this negligence action on December 13, 1984, in Mobile County Circuit Court against HCA, HMC, and Dr. J.T. Jones.
On February 12, 1983, Aubrey Lee Anderson was admitted to Monroe County Hospital's emergency room for treatment of influenza, accompanied by nausea, weakness, and vomiting. His attending physician prescribed intravenous fluids and then left the patient to get the fluids. While the physician was out of the room, Mr. Anderson fell or rolled off the examining table and sustained a fracture to his left clavicle. His negligence action was brought on April 18, 1984, in Mobile County Circuit Court against HCA, HMC, and the Monroe County Hospital Board.
On August 20, 1983, Christopher Eugene Long, 11, was admitted to Flowers Hospital *Page 842 
in Dothan to undergo surgery, based upon a presumptive diagnosis of appendicitis. The boy did poorly postoperatively and suffered cardiac arrest. He was resuscitated but sustained considerable brain damage and died on August 29. On December 22, 1983, a wrongful death action was brought in Mobile County Circuit Court by his estate against Flowers Hospital, HCA, and the surgeon, Dr. Richard McClintock.
On December 24, 1983, Harry Timothy Black was admitted to L.V. Stabler Memorial Hospital in Greenville to have a pacemaker implanted. During this procedure, Mr. Black alleged, he suffered injury to the ulnar nerve in his right elbow and subsequently lost the use of his right arm. On December 19, 1984, he brought a negligence action in Mobile County Circuit Court against HCA and the surgeon, Dr. Edward F. McCraw.
After consolidation of the cases, the trial court entered its final order granting HCA's and HMC's motions for summary judgment and granting motions of all the defendants for transfer of venue, sending Larrimore andAnderson to Monroe County Circuit Court,Black to Butler County Circuit Court, andLong to Houston County Circuit Court.
 THE ISSUES PRESENTED ON APPEAL
The complexity of these appeals is manifested in the respective arguments of the parties and in the findings of the trial court. The appellees contend that control of the hospital employees who allegedly committed these negligent acts cannot be imputed to HCA and HMC via the theory of respondeat superior and cite the trial court's order, which states in relevant part:
 "Plaintiffs have failed to create a factual issue that HCA or Management [HMC] employees were involved in the commission of the alleged torts, or are responsible on a respondeat superior basis. In the Anderson case, the evidence is undisputed that the nursing personnel who allegedly abandoned plaintiff were employees of the Monroe County Hospital Board. In Larrimore, the evidence is undisputed that the pharmacist is an employee of the Monroe County Hospital Board. In Black, the personnel criticized in the affidavit of plaintiff's expert are all, again, without dispute, employees of the L.V. Stabler Memorial Hospital. In Long, the nurses criticized by plaintiff's expert are employees of the Flowers Hospital, Inc."
The appellants' argument that employees of HMC and HCA had the right to control the hospital employees in each of these cases did not impress the trial court. It was not convinced that the appellants had sustained their burden of proof in establishing that the two corporations committed negligent acts or omissions in their roles as supervisors or overseers of the hospital employees.
Both the arguments of counsel and the trial court's findings tend to confuse the transfer-of-venue issue in two aspects: 1) They treat the question of the respective liabilities of HCA and HMC as a common factor for venue determination; and 2) they treat the determination of liability of all three hospitals as a common factor, even though Stabler Hospital is wholly owned by HCA and its own employee is the hospital administrator, while the remaining two hospitals are operated by HCA's wholly owned subsidiary corporation, HMC.
The appellants' burden of proof, however, was more aptly refined at oral argument by counsel for one of the non-hospital appellees:
 "Before the transfer of venue can be undone, plaintiff must, one, establish a scintilla of evidence of negligent acts or omissions of HCA employees acting on behalf of HCA, whereby plaintiff suffered injury, or establish a scintilla of evidence of a relationship between HCA as a corporation and other persons or affiliated corporations consistent with . . . established principles of vicarious liability as to persons, or alter ego liability as to affiliated corporations, and, two, establish a scintilla of evidence of negligent acts or omissions by these persons or affiliated corporations in furtherance *Page 843 
of that relationship whereby the plaintiffs suffered an injury.
 "And unless you have that, the transfer which ensues by the affirmance of the summary judgments is valid. . . . And I point out that this result obtains even if this Court concludes that summary judgment in favor of HCA Management is inappropriate and is due to be reversed, because HCA Management does no business in Mobile County. So if [this Court] affirms as to HCA and reverses as to HCA Management, you still have no venue in Mobile County."
For the purpose of testing the propriety of the trial court's granting of defendants' motions for change of venue, we have chosen to treat the only issue that is common to all four cases: whether HCA is entitled to summary judgment. Our resolution of this single issue requires a two-step inquiry: 1) Does the evidence show that HCA acceded to the rights (and thus assumed the legal duties) of the owners in operating the hospitals? and 2) Does the evidence present a triable issue of fact as to HCA's liability, under the theory of respondeat superior, for the negligence of the hospital employees?
To be sure, once the first inquiry is answered, the second inquiry is self-answering. That is to say, if we answer the first question (whether there is a triable issue of fact as to HCA's status as the employer of the alleged tort-feasor) in the negative, the second question (whether there is a triable issue of fact as to HCA's liability) is mooted. On the other hand, if we determine that the evidence makes out a triable issue of fact as to HCA's status as the employer, no further discussion is required to demonstrate that each of the plaintiffs has clearly met the requisite burden to withstand the defendants' motions for summary judgment on the liability issue.
As the above-quoted portion of the trial court's order amply demonstrates, the genuine issue of material fact being tested in each of these cases is not the tort-feasor
status of the hospital employee or the physician, but theemployer status of HCA. Stated otherwise, the single dispositive issue, then, is whether the evidence presents a triable issue of fact as to HCA's status as theprincipal (i.e., the hospital employer) of the hospital employee or agent (i.e., the alleged tort-feasor), as these terms are commonly understood in the application of the doctrine of vicarious liability.[1]
We begin our analysis by an overview of the facts in support of, and in opposition to, the defendants' motions for summary judgment as they relate to the employer status of HCA. Because we find there is a material distinction between the application of the "separate corporate entity" doctrine with regard to the two hospitals operated by HMC and the way these principles are to be applied to Stabler Hospital, in which HMC is not involved, we deem it appropriate to isolate the facts common to the HMC-managed hospitals from the facts applicable to HCA's operation of Stabler Hospital.[2]
 HMC-OPERATED HOSPITALS
HCA is an investor-owned corporation whose stock is traded on the New York Stock Exchange. At the time these causes of action arose (1983), HCA claimed revenues totalling almost $4 billion and net income of $243,218,000, according to its annual report. It owned all of the stock of the corporations that own Doctors Hospital and Knollwood Park Hospital in Mobile and *Page 844 
L.V. Stabler Memorial Hospital in Greenville.
HMC is a wholly owned subsidiary of HCA. It has management agreements with Monroe County Hospital in Monroeville and Flowers Hospital in Dothan. It is a Delaware corporation. On July 31, 1984, there were 15 officers of HCA. One of those officers also served as an officer of HMC. There were 18 directors of HCA. Of those directors, two served as directors of HMC. HMC is responsible, generally, for the day-to-day operations of the hospitals with which it has management agreements.
The management agreement entered into between Monroe County Hospital and HMC, for example, gave HMC the "authority and responsibility to conduct, supervise, and manage the day-to-day operation of the Hospital" and provided that "Subject to any different conditions imposed by the Board, HMC shall manage the Hospital in the same efficient manner as HCA manages hospitals solely owned by it."
All personnel decisions were vested in HMC, including "in-service training, attendance at seminars or conferences, staffing schedules, and job and position descriptions with respect to all employees of the Hospital."
HCA West is one of five major corporate bodies for which HCA serves as the holding or parent company. HCA West has six divisions, and one of these is the New Orleans division, which oversees both managed and owned HCA facilities in Alabama.
Twyman Lee Towery, vice president of the New Orleans division of HCA West, Inc., which encompasses Alabama, Louisiana, and Mississippi, testified in a deposition that he also served as vice president of Doctors Hospital of Mobile and Community Hospital of Andalusia. He identified the directors of the Doctors Hospital board, who also served as president of HCA West and vice presidents of operations and development for HCA.
The appellants insist that important rights of ownership, vested in HCA, included the right to guarantee management agreements, to institute its own retirement program, to hire and fire employees, to install its own management team, to centralize financial operations — including bookkeeping, contracting, and cash management — and to bill hospitals for the services, expenses, and fringe benefits of the management teams it supplied through HMC. Further, the vice president of the New Orleans division of HCA West, Mr. Towery, described himself as a "focal point," a "liaison," and a "conduit" between the corporation that managed the hospitals (HMC) and HCA.
While the evidence, when viewed most favorably to the plaintiffs' cases, establishes a close-knit relationship among the HMC-operated hospitals, their corporate managers, and HCA, we find that the summary judgment movants have met their burden of showing that there is no triable issue of material fact in the two cases involving Monroe County Hospital (Larrimore and Anderson) and in the one case involving Flowers Hospital (Long). We find no evidence from which the factfinder could reasonably infer that HCA controlled, or retained the right to control, the day-to-day operations of the HMC-operated hospitals.
Indeed, the case of Ex Parte Baker, 432 So.2d 1281
(Ala. 1983), for all practical purposes, presented the same issue, based on substantially the same facts as those here presented with respect to the HMC-operated hospitals. As this Court held in Baker, we now hold, as toLarrimore, Anderson, and Long, that the evidence is insufficient to present a triable issue of fact with regard to HCA's status as employer of the alleged tort-feasors.
The evidence is without dispute that the business affairs of HMC, as the manager and operator of the two subject hospitals, were conducted in a manner appropriate to its separate purposes and functions, without the degree of dominion and control required for it to be regarded as the "alter ego," or a "mere instrumentality," of its corporate parent, HCA. In addition to the cases cited inBaker, see Duff v. Southern Railway Co.,496 So.2d 760 (Ala. 1986), for *Page 845 
an excellent discussion of the parent/subsidiary corporation dichotomy. See, also, Barrett v. Odom, May DeBuys,453 So.2d 729 (Ala. 1984).
 STABLER HOSPITAL
A detailed recital of every fact developed by the evidence with regard to HCA's relationship to Stabler Hospital is unnecessary. Because we have already recited the material facts with regard to the HMC-operated hospitals' relationship to HCA, it will suffice here to state only a few facts that stand in contrast to those stated above. At the outset, we recognize HCA's contention that, when it purchased 100 percent of Stabler's stock, it did not substitute itself for Stabler's role as the entity operating the hospital. In other words, HCA contends that Stabler occupied the same corporate status as operator of the Greenville hospital as HMC occupied with respect to the Monroeville and Dothan hospitals. In many respects, we agree; but the evidence discloses certain material differences.
As alluded to earlier, upon acquiring ownership of Stabler, HCA installed its own employee as the hospital's administrator. Stabler's president, secretary, and assistant secretary were officers of HCA. The record contains ample evidence from which the factfinder could reasonably infer that those supervisory employees directly responsible for the day-to-day operation of Stabler were officers or employees of HCA. From a functional point of view, Stabler Hospital's separate management activities relate almost entirely to corporate formalities, in sharp contrast to the evidence of HMC's day-to-day management activities on behalf of Monroe County Hospital and Flowers Hospital.
We emphasize that we are not holding, as a matter of law, that the evidence establishes that HCA was the employer of the alleged tort-feasor in the Stabler Hospital case. Rather, we find from the totality of the evidence that a triable issue of fact exists with respect to HCA's status as the employer and with respect to the merits of the claim based on its alleged liability, so as to preclude disposition of theBlack claim by way of summary judgment.
AFFIRMED AS TO HCA IN CASES NUMBERED 85-1347, 85-1348, AND 85-1350; REVERSED AND REMANDED AS TO HCA IN CASE NUMBER 85-1349, WITH INSTRUCTIONS; REVERSED AND REMANDED AS TO HMC IN CASES NUMBERED 85-1347 AND 85-1348.
MADDOX, ALMON, SHORES, BEATTY, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] For an excellent discussion of the "respondeat superior" doctrine and its application, see Old SouthernLife Insurance Co. v. McConnell, 52 Ala. App. 589, 594,296 So.2d 183, 186 (1974), cited in National StatesInsurance Co. v. Jones, 393 So.2d 1361, 1367 (Ala. 1980), and Autrey v. Blue Cross Blue Shield ofAlabama, 481 So.2d 345, 347 (Ala. 1985).
[2] We caution the reader that our references to "the two hospitals operated by HMC" and "HMC-operated hospitals" are to be understood throughout the opinion as terms ofidentity merely. We have not overlooked HMC's argument that the local hospital corporation — and not HMC — is the employer in the Monroe County Hospital cases (Larrimore and Anderson). Indeed, theLong suit asserts a claim against Flowers Hospital and not against HMC. These issues are not addressed in this opinion.