William NOBLES, et al., Plaintiffs,

v.

RURAL COMMUNITY INSURANCE SERVICES, Defendant.

Civil Action No. 00–T–375–S.

United States District Court,
M.D. Alabama,
Southern Division.

Feb. 23, 2004.

B. Stephen Sansom, B. Stephen Sansom, P.C., Florala, AL, Marita K. Murphy, Murphy Law Office, Stanley J. Murphy, Tuscaloosa, AL, for Plaintiffs.

Douglass Taylor Flowers, Daniel F. Johnson, Lewis, Brackin, Flowers & Hall, Dothan, AL, Elizabeth T. Bufkin, W. Kurt Henke, Henke–Bufkin, Clarksdale, MS, for Defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

This lawsuit, which has a convoluted procedural history, including court-ordered arbitration, reinstatement of the case after arbitration, several modifications of the scheduling order, many discovery disputes, and even reassignment back-and-forth among three district judges, is before the court on other complicated procedural issues.

Plaintiffs William Nobles and Ronnie Hales originally brought this lawsuit in state court in February 2000 charging defendant Rural Community Insurance Services (RCIS) with a number of state-law based claims relating to multiple crop insurance policies that Nobles and Hales bought from RCIS in 1999. On March 29, 2000, RCIS removed the case to this court based on diversity-of-citizenship jurisdiction. *See* 28 U.S.C.A. §§ 1332 (diversity), 1446 (removal). This case is now before the court on Nobles and Hales's motions to amend and to remand.

### I. BACKGROUND

The facts pertinent to the court's decision in this matter solely concern this case's procedural history. As noted above, this case was originally filed in state court in February 2000. Shortly thereafter, on March 29, RCIS removed it to the United States District Court for the Middle Dis-

trict of Alabama. The case was assigned randomly to United States District Judge Ira DeMent, who adopted a uniform scheduling order on April 10, setting forth a schedule for discovery and the filing of motions, including any motions to amend or to add parties.

On April 19, RCIS filed motions to compel arbitration and to stay the proceedings, which were opposed by Nobles and Hales and fully briefed by the parties. While those motions were pending, Nobles and Hales filed a September 5 motion asking the court to compel RCIS to respond to their discovery requests, which RCIS had not yet done. Nobles and Hales's discovery motion was referred to United States Magistrate Judge John L. Carroll, who held a hearing on the issue on September 22. That same day, the court granted Nobles and Hales's motion in part and denied it in part, requiring RCIS to respond to Nobles and Hales's pending interrogatories and requests for production, to participate in depositions, and to participate with them in the initial-discovery process.

On November 21, Judge DeMent issued a memorandum opinion and order granting RCIS's motions to compel arbitration and to stay. In that opinion, he found that Nobles and Hales "agreed to arbitrate any factual determination arising out of their RMA-reinsured crop policies" and that they "may litigate their remaining causes of action after first complying with the relevant contractual provisions." *Nobles v. Rural Community Insurance Services,* 122 F.Supp.2d 1290, 1301 (M.D.Ala.2000).

More than a year later, on December 13, 2001, Nobles and Hales filed a motion to reinstate their case to the active docket. In that motion, they noted that the parties had arbitrated the factual issues defined by the court and that the arbitrators had ruled in their favor on each of these issues on November 28. Although Judge De-

Ment granted the motion to reinstate on December 21, the arbitration process continued for several more months, until August 2002, over the parties' dispute concerning the awarding of interest on Nobles and Hales's unpaid indemnity.

Putting the case back on a litigation track, on March 26, 2002, Judge DeMent entered a second uniform scheduling order setting, among other things, a pretrial hearing for December 5 and a trial for January 27, 2003. The March 26 order also provided that "any motions to amend the pleadings and to add any parties shall be filed no later than 75 days from the date of this order"; in other words, the deadline for amending the pleadings to add parties was set for June 10, 2002.

On May 3, Nobles and Hales filed a renewed motion to compel discovery, stating that they had repeatedly sought RCIS's compliance with its discovery obligations and asking for the court to order RCIS to comply with a number of their first requests for production, requests that originally had been served on RCIS more than two years earlier, while the case was pending in state court. Both that motion and RCIS's response were referred to United States Magistrate Judge Delores R. Boyd, who held a telephone conference on May 30. After that conference, Judge Boyd entered an order finding that the parties were "now engaged in a diligent, good-faith attempt to resolve their disagreement and should be granted additional time" to seek resolution. Judge Boyd also found it to be evident "that the nature and scope of the parties' projected discovery ... will make it difficult for the parties to honor scheduling deadlines presently set." As such, she directed the parties to file a jointly prepared motion with Judge DeMent asking for a reasonable extension of the deadlines in his March 26 order. In response to Judge Boyd's directive, the

parties filed a joint motion for an amended scheduling order on June 19. Nearly a month later, on July 11, Judge DeMent denied that motion by stamped order.

On August 5, as part of a routine reassignment of cases in response to Judge DeMent having assumed senior status earlier in the year, the case was reassigned to the undersigned, United States District Judge Myron H. Thompson. On September 6, the last day for filing a dispositive motion under Judge DeMent's March 26 scheduling order, RCIS filed a motion for summary judgment. This deadline, among others, was dependent on the pretrial date of December 5.

On September 23, after an unrecorded conference with the parties' counsel on September 17, this court ordered Judge DeMent's March 26 scheduling order to be amended to reflect a new pretrial date of April 29, 2003, and a new trial date of June 2, 2003. This court's order specifically noted that all other dependent deadlines in the scheduling order were to be adjusted accordingly. It made no specific mention, however, of any changes to the deadline to amend pleadings or add parties.

Nobles and Hales filed a response to RCIS's summary-judgment motion on October 23, 2002. In that motion, Nobles and Hales listed some "relevant discovery issues" and stated that they had been having "significant difficulty in securing even the most elementary discovery from RCIS," and "Even now RCIS remains in significant default in its responses." Nobles and Hales also noted to the court that, "if facts developed in discovery support it, their complaint may be amended to include a new defendant or defendants, one or more of which might well remove the diversity jurisdiction of this Court." In a footnote, Nobles and Hales stated for the

first time that Wells Fargo & Co. and Phillip East—"who, according to documents very recently tendered by RCIS in discovery, stood to gain personally" in the transaction between Nobles, Hales, and RCIS—were among the parties likely to be added.

On December 2, 2002, this case was again reassigned, this time to newly appointed United States District Judge Mark Fuller. Less than a week later, on December 10, Nobles and Hales filed the two motions now at issue, their motions to remand and to amend the complaint. In that amended complaint, Nobles and Hales seek to add Wells Fargo and East as defendants and to assert additional claims against RCIS.[1] Nobles and Hales's proposed claims against East are: fraud, negligence, wantonness, and suppression of material facts. Their proposed claims against Wells Fargo are: breach of contract, fraud, suppression of material facts, negligent and wanton failure to supervise, equip, and train employees, and bad faith.

On February 19, 2003, due to a potential conflict between Judge Fuller and East, this case (including all pending motions and the parties' briefs) was reassigned back to the undersigned, Judge Thompson.

## II. MOTION TO AMEND

### A. Timeliness

■ To resolve the parties' dispute over whether the court should grant Nobles and Hales's motion to amend, the court must first look at whether the motion was timely under the uniform scheduling orders and amendments thereto entered in this case. The court concludes that it was not.

For Nobles and Hales's motion to amend to have been timely, the court's

---

1. RCIS is a wholly owned subsidiary of Wells Fargo Insurance, Inc., which is a wholly owned subsidiary of Wells Fargo.

September 23 order amending Judge De-Ment's March 26 scheduling order would need to have been, in effect, a new scheduling order, thus resetting the deadline for amending the pleadings and adding new parties. Nobles and Hales contend that it was, and that, under this new scheduling order, their motion to amend was timely filed.[2] The court finds, however, that its order was intended to reset only the pretrial and trial dates, and the deadlines dependent on those two dates. Had the court wanted to enter an entirely new scheduling order or to change the date to amend the pleadings and add parties, it would have done so explicitly, rather than amending Judge DeMent's March 26 order. As such, no new scheduling order was entered, despite Nobles and Hales's understanding to the contrary, and their motion to amend was not timely filed.[3] The court must therefore decide whether to grant Nobles and Hales's motion despite its untimeliness.

### B. Federal Rules of Civil Procedure

Both Rules 15 and 16 of the Federal Rules of Civil Procedure facially guide the court's decision whether to allow an untimely amendment to the complaint. Rule 15 provides that, if a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Rule 16, on the other hand, requires the court to enter a scheduling order that limits the time to join other parties and to amend the pleadings, Fed.R.Civ.P. 16(b)(1); under Rule 16, the modification of such a scheduling order is to be granted only upon a showing of good cause. *Id.*

■ The Eleventh Circuit Court of Appeals has found that Rule 16's good-cause standard governs a party's ability to amend his complaint after the district court has entered a scheduling order. *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 n. 2 (1998) ("[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."). It is only after the court addresses whether the proposed amendment may be granted under Rule 16 that the court is to determine whether it is proper under Rule 15. *Id.* at 1419 ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."); *see also Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C.1997) (describing "two-step analysis" required under Rules 15 and 16 when a motion to amend the pleadings and join additional parties is filed after the scheduling order deadline). Having found that Nobles and Hales's motion to amend was filed after the scheduling order deadline, the court must first determine whether they have shown good cause for this court to modify that order.

---

**2.** In fact, Nobles and Hales's motion would have been filed one day late, an error the court typically overlooks unless the opposing party can show substantial prejudice.

**3.** Nobles and Hales argue that *both* parties understood this court's September 23 order to change the deadline for amending the complaint. As evidence of this, Nobles and Hales point to a phone call between the parties' counsel and Judge Fuller's law clerk, in which Dan Johnson, one of RCIS's counsel, purportedly agreed that Nobles and Hales's motion to amend should not be considered untimely. That phone call, however, was not recorded, and Johnson was not on the later, February 3, 2003, telephone conference between the undersigned and the parties. As such, the court cannot accord any weight to this argument.

### 1. Rule 16

■ The court's focus in evaluating a motion to amend under Rule 16 is on Nobles and Hales's diligence; that is, the court may grant the late-filed motion if the pretrial schedule could not reasonably have been met despite Nobles and Hales's diligence. *Sosa,* 133 F.3d at 1418; *see also Johnson v. Mammoth Recreations,* 975 F.2d 604, 609 (9th Cir.1992) ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' ") (citations omitted). If Nobles and Hales were not diligent, the court's inquiry should end. *Sosa,* 133 F.3d at 1418.

■ Nobles and Hales make a number of arguments for why the court should grant their motion to amend. First, they point to the procedural history of the case, which involved over a year in arbitration, and argue that the time between when RCIS filed its motion to compel arbitration in April 2000 and the final ruling of the arbitration panel in August 2002 was not fully available to the parties for normal discovery and other pretrial processes. Thus, Nobles and Hales assert, although this case was originally brought almost three years before their motion to amend was filed, very little of that time was available for the discovery that led to Nobles and Hales's motion.

Second, Nobles and Hales argue that, in the limited time when the parties were actively engaged in discovery, RCIS did not satisfy its discovery obligations. In support of that argument, Nobles and Hales point out that they twice filed motions to compel discovery, and that, after a conference regarding the second motion, Magistrate Judge Boyd recognized that the parties' discovery would make it difficult

for them to honor the scheduling deadlines set in Judge DeMent's March 26 order. Indeed, in June 2002, the parties filed a joint motion to extend the deadlines set forth in that order. Nobles and Hales have also submitted correspondence between the counsel in which Nobles and Hales continually request that RCIS respond to their discovery requests. Nobles and Hales say that they received the information that led to the current motion to amend not until September 2002, when RCIS produced more than 2,000 pages of documents.

In response, RCIS argues that Nobles and Hales were in possession of the information leading to East being added as a defendant long before the June 10 deadline to add parties.[4] RCIS points out that Nobles and Hales deposed East on August 1, 2001, in connection with the parties' ongoing arbitration, and found out at that time that he received commission-based pay, and therefore that he may have had a motive to defraud Nobles and Hales when he sold them the insurance policies. Nobles and Hales dispute this contention, arguing that they have not been able to take a post-arbitration deposition of East to confront him with newly discovered evidence, and that until RCIS's discovery responses were received in September, Nobles and Hales could not make a bona-fide assessment of which amendments to make or which parties to add to their complaint.

Given the totality of the circumstances surrounding this lawsuit, the court finds that Nobles and Hales have shown good cause for the court to allow an untimely amendment of their complaint. Much of the difficulty the court has had in resolving this issue lies in the case's procedural posture; besides the time—over a year—which the case spent in arbitration, it has

---

4. RCIS makes no such argument as to Wells Fargo, instead arguing that there is no valid reason for adding Wells Fargo as a party.

also been transferred back and forth among three United States District Judges, and motions to compel discovery have been referred to two United States Magistrate Judges. Uniform scheduling orders have twice been entered, one of which was later amended by this court. During this time, the objective evidence shows that Nobles and Hales diligently attempted to seek discovery responses from RCIS, responses that appear to have been a long time in coming. Taken together, it appears that Nobles and Hales have diligently pursued the discovery efforts that led to their attempted amendment; at the very least, given this court's unfamiliarity with the case due to its convoluted procedural history, the court cannot find that they have not. As such, the court finds good cause for amending the pretrial scheduling order to allow Nobles and Hales's motion to amend.

### 2. Rule 15

Having found good cause to amend the scheduling order, the court must now inquire as to whether Nobles and Hales's motion to amend is proper under Rule 15. As noted above, Rule 15 provides that leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). The Eleventh Circuit, however, has found it to be within the district court's discretion to deny a motion to amend due to futility, on grounds such as failure to state a claim or the statute of limitations having run. *See, e.g., United Food and Commercial Workers Unions v. Philip Morris, Inc.*, 223 F.3d 1271, 1275 (11th Cir.2000) (finding no error in the district court's decision to deny leave to amend the complaint as futile for failure to state a claim); *Brewer–Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284–85 (11th Cir.2000) (finding no error in the district court's decision that an amendment would have been futile on statute of limitations grounds). The court will therefore address RCIS's arguments that Nobles and

Hales's motion to amend should be denied as futile.

#### a. Statute of Limitations

First, RCIS argues that the motion to amend should be denied as futile because the claims against East and Wells Fargo are barred by the statute of limitations. Nobles and Hales's proposed amended complaint would charge both East and Wells Fargo with fraud, suppression of material facts, negligence, and wantonness, and would charge Wells Fargo with bad faith. Under Alabama law, claims for fraud and suppression are subject to a two-year statute of limitations. *Kelly v. Connecticut Mut. Life Ins. Co.*, 628 So.2d 454, 460 (Ala.1993) (fraud, suppression). The statute of limitations begins to run on these claims "when the plaintiff discovers, or should have discovered, the fraud." *Kelly*, 628 So.2d at 460. Bad faith, too, has a two-year statute of limitations, which begins to run "when the party seeking to bring the action knew of facts which would put a reasonable mind on notice of the *possible existence* of [bad faith]." *ALFA Mut. Ins. Co. v. Smith, Jr.*, 540 So.2d 691, 693 (Ala.1988) (emphasis in original). Negligence and wantonness are also subject to a two-year statute of limitations, but the limitations periods for those claims begins to run the date the injury occurred. *Williams v. Norwest Fin. Ala., Inc.*, 723 So.2d 97, 104 (Ala.Civ.App.1998).

Nobles and Hales necessarily discovered the injury in this case—RCIS's refusal to pay on the crop insurance policies that Nobles and Hales bought from it in 1999—by February 2000, the date on which Nobles and Hales originally brought their suit against RCIS in state court. Thus, the negligence and wantonness claims against East and Wells Fargo are time-barred, unless Nobles and Hales's proposed amended complaint relates back to the date they filed their first complaint. Similarly, Nobles and Hales necessarily

had discovered the purported fraud and bad faith by the time they filed their first complaint in February 2000, as they alleged both fraud and bad faith against RCIS in that complaint. As such, Nobles and Hales's fraud, suppression, and bad faith claims are also time-barred, unless the amended complaint relates back.[5]

To determine if Nobles and Hales's proposed amended complaint relates back, the court looks to Rule 15(c) of the Federal Rules of Civil Procedure, which provides as follows:

"An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

Fed.R.Civ.P. 15(c). Fed.R.Civ.P. 4(m), which is mentioned, provides for a 120–day period.

Nobles and Hales's proposed amended complaint could relate back if it met the requirements of either Rule 15(c)(1) or Rule 15(c)(3). *Saxton v. ACF Industries, Inc.*, 254 F.3d 959, 966 n. 11 (11th Cir. 2001) (holding that a proposed amendment seeking to change a defendant in a diversity case could relate back under either Rule 15(c)(1) or 15(c)(3)). Rule 15(c)(3) sets forth the federal rule for relation back when the amendment seeks to change the party or "the naming of the party." Rule 15(c)(2) is not applicable when the amendment seeks to change the party because Rule 15(c) provides the federal rule in that case. *Powers v. Graff*, 148 F.3d 1223, 1225 (11th Cir.1998). Rule 15(c)(1) allows relation back in federal court when state law provides the statute of limitations and relation back would be permitted under state law. Rule 15(c)(1) was added to the Federal Rules of Civil Procedure in 1991 to make clear that "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in [the federal] rule, it should be available to save the claim." Fed.R.Civ.P. 15 advisory notes.

Nobles and Hales's proposed amended complaint cannot relate back under Rule 15(c)(3) because their failure to name East and Wells Fargo as defendants earlier was not the result of a "mistake." Nobles and Hales argue that it was only upon review of discovery produced in September 2002 that they became aware of East and Wells Fargo's culpability, allowing them to correct the "mistake concerning the identity of the proper party" that occurred when

---

**5.** The fraud itself is necessarily distinct from the person or entity that committed the fraud. Thus, the statute of limitations on the fraud claim, as well as the negligence, wantonness, bad faith, and suppression of material fact claims, began to run as late as February 2000, even if Nobles and Hales did not discover who committed the fraud, negligence, etc. until more recently.

Nobles and Hales filed their original complaint. However, Nobles and Hales long knew of East's involvement in the transaction at issue, and should have known that RCIS was a subsidiary of Wells Fargo. Thus, their "mistake" was a mistake in legal judgment, not a mistake in the naming of the party, and thus it is not covered by Rule 15(c). *Rendall–Speranza v. Nassim,* 107 F.3d 913, 917–18 (D.C.Cir.1997) ("[A] plaintiff's mistaken belief that A is liable for a tort against her when in fact B is the responsible party . . . is one of legal judgment rather than a mere misnomer."); *see also Powers v. Graff,* 148 F.3d 1223, 1227 (11th Cir.1998) (finding no abuse of discretion in district court's refusal to allow relation back when plaintiffs knew defendants' identity before statute of limitations ran). The purpose behind Rule 15(c) was not to allow for the correction of this type of mistake; indeed, "[n]othing in the Rule or in the [Advisory Committee] Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged. In fact, the Notes speak of a defendant that may properly be added under Rule 15(c) as an 'intended defendant,' and of an amendment pursuant to the Rule as 'a name-correcting amendment.' " *Rendall–Speranza,* 107 F.3d at 918; *see also Powers,* 148 F.3d at 1227 (quoting same). Nobles and Hales's failure to include East and Wells Fargo occurred because of a lack of knowledge of their culpability, not because of a misnomer or misidentification. *See Wayne v. Jarvis,* 197 F.3d 1098, 1102–04 (11th Cir. 1999) ("We do not read the word 'mistake' to mean 'lack of knowledge.' For these purposes, ignorance does not equate to misnomer or misidentification.").

In addition, Nobles and Hales have not argued that they have met Rule 15(c)'s 120–day notice requirement. That is, they have not argued that, within 120 days of the filing of the initial complaint in February 2000, East and Wells Fargo "ha[d] received such notice of the institution of the action that the[y] . . . will not be prejudiced in maintaining a defense on the merits, and . . . knew or should have known that, but for a mistake concerning the identity of the proper part[ies], the action would have been brought against the[m] . . . ." Fed.R.Civ.P. 15(c)(3).

Neither can Rule 15(c)(1) save Nobles and Hales's proposed amendments. Under Rule 15(c)(1), the amendment could relate back if it would do so under Alabama's rules on relation back. Under Alabama law, relation back is governed by Ala. R. Civ. P. 15(c). The Alabama rule was amended in 1992 so that it became almost the same as Fed.R.Civ.P. 15(c). The Alabama rule "acknowledges the availability of relation back under circumstances where a federal cause of action would be saved by federal principles of relation back." Ala. R. Civ. P. committee comments. The Alabama rule does differ from the federal rule in a few ways, most notably by allowing relation back under "fictitious party practice" rules. However, Nobles and Hales did not name any fictitious parties in their complaint, and none of the other differences between the federal rule and the Alabama rule is applicable here.[6] Thus, for the same reasons that

---

**6.** Ala. R. Civ. P. 15(c) is the same as Fed. R.Civ.P. 15(c) with these exceptions: (1) Ala. R. Civ. P. 15(c)(2) makes an exception for "counterclaims maturing or acquired after pleading" that would be allowed under Ala. R. Civ. P. 13(c); (2) Ala. R. Civ. P. 15(c)(3) provides that the period for service of process on a newly-named defendant is "within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later"; and (3) Ala. R. Civ. P. 15(c)(4), which has no federal counterpart, provides that relation back is allowed when it is "permitted by

their proposed amended complaint cannot relate back under the Fed.R.Civ.P. 15(c)(3), it cannot relate back under Fed. R.Civ.P. 15(c)(1).

For all these reasons, Nobles and Hales's proposed amended complaint against East and Wells Fargo does not relate back to the filing of the original complaint, and their claims against East and Wells Fargo, save the breach-of-contract claim against Wells Fargo, must be denied as futile.

### b. Failure to State a Claim

■ RCIS argues that Nobles and Hales's motion to amend should be denied as futile because Nobles and Hales's claims against Wells Fargo are not actionable. RCIS argues that Wells Fargo is a distinct corporate entity from RCIS and therefore the proposed amendment fails to state a valid cause of action against Wells Fargo. In support of this argument, RCIS cites a number of cases relating to piercing the corporate veil, specifically in the situation such as this, when one corporation is a subsidiary of another. *See, e.g., Duff v. Southern Ry. Co.*, 496 So.2d 760, 762–63 (Ala.1986). Having found that Nobles and Hales's other claims against Wells Fargo are due to be denied on statute of limitations grounds, the court will only address this argument insofar as it applies to Nobles and Hales's breach-of-contract claim against Wells Fargo.

It is not entirely clear from Nobles and Hales's proposed amended complaint on what basis they assert a breach-of-contract claim against Wells Fargo. Count VIII of the proposed amended complaint asserts breach of contract, fraud, suppression of material facts, and negligent and wanton failure to supervise, equip and train employees against RCIS and Wells Fargo. While Nobles and Hales appear to assert that Wells Fargo *by itself* committed some

principles applicable to fictitious party practice pursuant to [Alabama] Rule 9(h)."

bad acts—for example, they assert in their proposed complaint that "Wells Fargo & Co. assumed and exercised responsibility and control for the supervision of the ethical standards and business conduct of members of 'The Wells Fargo Team' including Phillip East"—none of those acts seems to relate to any breach-of-contract claim. Indeed, the sole mention of Wells Fargo's purported breach of contract in the proposed amended complaint says that "Wells Fargo & Co. is responsible for the breach of contract ... and other civil wrongs committed by its wholly owned subsidiary RCIS and its employees." Thus, it appears that the sole basis upon which Nobles and Hales assert that Wells Fargo is responsible for breach of contract is RCIS's behavior.

■ Under Alabama law, a corporation is a legal entity existing separate and apart from other legal entities, such as its shareholders. *Simmons v. Clark Equip. Credit Corp.*, 554 So.2d 398, 400 (Ala.1989). The mere fact that one party, including a corporation, owns all the stock in another corporation does not destroy the separate corporate entities. *See Messick v. Moring*, 514 So.2d 892, 895 (Ala.1987). Wells Fargo, as parent corporation of Wells Fargo Insurance, the parent of RCIS, cannot be held liable for RCIS's actions "unless the parent corporation so controls the operation of the subsidiary as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation." *Duff*, 496 So.2d at 762. Nobles and Hales have presented no evidence, and made no argument, that Wells Fargo so controls the affairs of RCIS. As such, Wells Fargo cannot, under Alabama law, be found liable for RCIS's purported breach of contract. Nobles and Hales's motion to amend therefore must be denied as futile for failure to state a claim, insofar as it attempts to bring a breach-of-contract claim against Wells Fargo.[7]

7. Having resolved Nobles and Hales's motion to amend on other grounds, the court does

## C. Additional Claims against RCIS

In their motion to amend, Nobles and Hales also attempt to add claims against RCIS. RCIS makes no argument as to why the motion to amend should not be granted as to the claims against it; even if RCIS did make such an argument, however, the court would be inclined to grant Nobles and Hales's motion in the interests of justice, *see* Fed.R.Civ.P. 15(a) ("[L]eave shall be freely given when justice so requires."), recognizing that such an amendment would relate back to the filing of Nobles and Hales's original complaint. *See* Fed.R.Civ.P. 15(c)(2) ("An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.") The court also notes that RCIS has not argued that the proposed amendment, insofar as it adds claims against it, would prejudice it in any way. *See, e.g., Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977) ("The burden is on the party opposing the amendment to show such prejudice."). As such, the court will grant Nobles and Hales's motion to amend insofar as it adds claims against RCIS.

## III. MOTION TO REMAND

Finally, the court briefly addresses Nobles and Hales's motion to remand. That motion was premised upon East being added as a defendant and the subsequent destruction of diversity jurisdiction. Because Nobles and Hales's motion to amend is being denied insofar as it adds East as a defendant, there is no basis for their motion to remand, and it, too, is due to be denied.

not reach RCIS's argument that the court

## IV. CONCLUSION

Based on the foregoing, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) Plaintiffs William Nobles and Ronnie Hales's motion to amend the complaint, filed December 10, 2002 (Doc. no. 72), is denied insofar as it attempts to add Phillip East and Wells Fargo & Company as defendants.

(2) Said motion to amend is granted insofar as it adds claims against defendant Rural Community Insurance Services;

It is further ORDERED that plaintiffs Nobles and Hales's motion to remand, filed December 10, 2002 (Doc. no. 71), is denied.

lacks personal jurisdiction over Wells Fargo.