MURDOCK, Justice
(concurring specially).
We address today an area of corporate law governed by equity and, concomitantly, one in which outcomes are driven by the facts assessed on a case-by-case basis. In their brief on rehearing, amici curiae *412 urge us to compare this case to First Health, Inc. v. Blanton, 585 So.2d 1331 (AIa.1991). In Blanton, this Court reiterated three elements for piercing the corporate veil when the ground asserted is excessive control by a shareholder of a subservient corporation: 1) complete control or domination of the subservient corporation, and 2) misuse of that control[13] that 3) proximately causes harm or an unjust loss. 585 So.2d at 1334-35 (citing Messick v. Moving, 514 So.2d 892, 894-95 (Ala.1987)).
It is important to recognize initially, however, that Blanton involved not a tort claim, but an attempt to collect a contract debt. Specifically, Blanton involved an attempt to collect a debt of approximately $19,000 based on an ordinary-course-of-business employment contract between a plaintiff physician and the corporation with which he had contracted to provide services. Commentators and courts alike have recognized that a higher standard should be met when a creditor voluntarily elects to enter into a contract with one corporation but then seeks to hold a different corporation or a shareholder responsible for the contractual debt. As this Court stated in Co-Ex Plastics, Inc. v. AlaPak, Inc., 536 So.2d 37 (Ala.1988): “ ‘[A] party who has contracted with a financially weak corporation and is disappointed in obtaining satisfaction of its claim cannot look to the dominant stockholder or parent corporation in the absence of additional compelling facts.’ ” 536 So.2d at 39 (quoting East End Memorial Ass'n v. Egerman, 514 So.2d 38, 44 (Ala.1987)).
“Voluntary creditors of corporations are held to a higher standard because they ‘are generally able to inspect the financial structure of a corporation and discover potential risks of loss before any transaction takes place. Consequently, courts are less sympathetic with voluntary creditors who, having had the opportunity of inspection, nevertheless elected to transact with an underca-pitalized corporation.’ Disregarding the Entities of Closely Held and Parent-Subsidiary Corporate Structures, 12 Cum. L. Rev. 155,165 (1981).”
536 So.2d at 39. See also Sandy J. Gris-ham, Commentary, Piercing the Corporate Veil in Alabama: In Search of a Standard, 35 Ala. L. Rev. 311, 313 (1984) (noting what it refers to as persuasive arguments that “the decision to disregard the corporate entity in the case of a contract creditor should be governed by considerations different from those in the case of an involuntary creditor,” who is “most often a tort victim who is unable to collect a judgment from a corporation with which he has not chosen to deal”).
I also note that the Blanton Court did not hold that the control shown in that case did not rise to the level necessary for piercing the corporate veil. See Blanton, 585 So.2d at 1335. Further, the evidence in the present case suggests even more extensive control than in Blanton.
In any event, Blanton does not involve the splintering of operational control and assets among numerous different legal entities within a single business enterprise in a manner that allows the enterprise to avoid responsibility for a significant judgment against it. In this regard, although the subsidiary in Blanton did file for bankruptcy, there is no indication in Blanton that, as in the present case, the subsidiary was formed with no significant assets, real or personal, or that it maintained virtually no liability insurance. For all that ap *413 pears, there was no justification for attempting to pierce the corporate veil other than the “mere domination,” as the Court put it, of a wholly owned subsidiary by its parent:
“We note that the trial court’s order holds only that First Health controlled First Health Courtland and that it benefited from the services performed by the employees of First Health Court-land ....
[[Image here]]
“Mere domination or control of a corporation by its stockholder cannot be enough to allow a piercing of the corporate veil.”
585 So.2d at 1335 (emphasis added). In Messick, upon which Fairfield Nursing and Rehabilitation Center, LLC (“Fairfield”), and the amici curiae also rely, this Court stated that it is in cases where “excessive control” constitutes “the ground” for piercing that the additional elements of misuse and proximate causation must be shown: “[W]e announced, in Kwick Set Components, Inc. v. Davidson Ind., Inc., 411 So.2d 134 (Ala.1982), a standard to be applied in order to determine whether the corporate entity should be disregarded when excessive control is the ground.'” 514 So.2d at 894 (emphasis added).
Given the fundamental principle that “ ‘a corporation is a distinct entity, to be considered separate and apart from the individuals who compose it,’ ” id. (quoting Moore & Handley Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 210, 6 So. 41, 43- (1889)), “[w]e have held that in the absence of fraud or inequity, the sole shareholder in a corporation will be protected from individual liability by the corporate entity, Washburn v. Rabun, 487 So.2d 1361 (Ala.1986).” Co-Ex Plastics, 536 So.2d at 39. That is, the theory of separate corporate existence can properly be discarded in the event of fraud or illegality or, “in the absence of fraud or illegality, to prevent injustice or inequitable consequences.” Messick, 514 So.2d at 894 (citing Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975)). Where there is no fraud in the formation and maintenance of the separate corporate entity, however, and no inequity to a judgment debtor as the result of inadequate capitalization of that entity, on what ground can we say there has been an “injustice or inequitable consequence”? That is, if the separate entity has been formed and maintained using the proper corporate formalities and is adequately capitalized, and the shareholder or parent is not misrepresented to the public or a - contracting party as the entity to which one can look for satisfaction of the contractual or other liabilities, there normally would be no basis for holding the shareholder or parent liable. It is under such circumstances — when the ground upon which the corporate veil is challenged is limited to excessive control— that Messick logically steps in to supply the missing inequity by requiring that we consider whether the control has been misused in a way that proximately caused the plaintiffs injury. “Such circumstances” are not the circumstances of the present case; more than “mere domination” or control is alleged and evidenced here.[14]
*414 Amici curiae argue on rehearing that this Court held on original submission that “in order to defeat summary judgment on piercing the corporate veil, all a plaintiff must establish is some amount of control over the subsidiary/subservient entity.” We held — and hold — no such thing. Instead, in the context of our review of a summary judgment, we hold simply that there was “substantial evidence” from which a reasonable fact-finder could conclude that Fairfield was part of a single business enterprise and that, although it maintained direct responsibility for a 190-bed skilled-care nursing home, it maintained almost no liability insurance and owned virtually no real or personal property and was controlled by other elements of the enterprise.
Amici curiae also complain about this Court’s recitation of the factors indicating “control” from our decision in Duff v. Southern R.R., 496 So.2d 760 (Ala.1986), suggesting that the recitation of these factors in Duff might have been superseded by our holding one year later in Messick. Nothing in Messick, however, overrules Duff or casts doubt on the continued viability of the factors described in Duff for the specific purpose of measuring the extent of a parent corporation’s control of a subsidiary corporation. In Econ Marketing, Inc. v. Leisure American Resorts, Inc., 664 So.2d 869, 870 (Ala.1994), this *415 Court, citing cases released both before and after Duff] stated that “[t]he factors to be considered when determining whether to pierce the corporate veil are well established.” [15]
In regard to all the foregoing, I note that the question of piercing is before us in the context of a summary judgment. Consequently, the question is not whether, when viewed in the light most favorable to the defendants, the evidence demands a reversal of a final judgment as a matter of law, but instead whether, when viewed in the light most favorable to the plaintiff/summary-judgment nonmovant, the evidence creates a genuine issue of material fact.
The purpose of the equitable doctrine of piercing the corporate veil is to prevent an injustice associated with a misuse of the corporate form. Our decision today is entirely consistent with that purpose in regard to a business enterprise that operates a 190-bed skilled-nursing-care facility where financial and operational control have been divided among a variety of different legal entities within the enterprise, where ownership of essentially all real and personal property used in connection with the facility has been transferred to one or more legal entities other than those exercising operational control over the facility, and where the facility itself maintains only $25,000 in liability insurance.

. "Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed.” Messick v. Moring, 514 So.2d 892, 895 (Ala.1987).

. As this Court observed in Econ Marketing, Inc. v. Leisure American Resorts, Inc., 664 So.2d 869 (Ala. 1994), a case decided three years after Blanton and some six years after Messick:
“ ' “Where the law recognizes one-man corporations, it is obvious that the law accepts the fact of domination by one person. See Ala.Code 1975, §§ 10-2A-90, 10-2A-58, 10-2A-57; Co-Ex Plastics, Inc. v. AlaPak, Inc., [536 So.2d 37 (Ala.1988) ]. Therefore, mere domination cannot be enough for piercing the corporate veil. There must be the added elements of misuse of control and harm or loss resulting from it. Messick v. Mating, [514
*414 So.2d 892 (Ala.1987)]; Washburn v. Rabun, [487 So.2d 1361 (Ala.1986)].” ’ "
664 So.2d at 870 (quoting Backus v. Watson, 619 So.2d 1342, 1345 (Ala.1993), quoting in turn Simmons v. Clark Equip. Credit Corp., 554 So.2d 398, 400-01 (Ala.1989) (emphasis added)). The Court immediately follows this passage with a litany of conditions that we may take either as examples of circumstances in which control is not the sole ground ("mere domination”) asserted for the piercing and therefore the additional elements of misuse and proximate causation are not essential, or as examples of circumstances (including fraud in use of the corporate form and depleting the subsidiary of financial resources needed to respond to a judgment) that satisfy these additional requirements:
" ' "The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation. See, e.g., Forester & Jeme, Inc. v. Daniels, [409 So.2d 830 (Ala. 1982)]; Hamrick v. First National Bank of Stevenson, [518 So.2d 1242 (Ala. 1987)]; Deupree v. Ruffino, 505 So.2d 1218 (Ala.1987); Messick v. Moring, supra; East End Memorial Association v. Egennan, [514 So.2d 38 (Ala.1987)].”’”
664 So.2d at 870 (quoting Backus v. Watson, 619 So.2d at 1345, quoting in turn Simmons v. Clark Equip. Credit Coip., 554 So.2d at 400).
In Simmons, this Court stated that "[t]he only evidence before the trial court in this case that in any way tends to support a judgment piercing the corporate veil is Simmons's testimony that he owned from 70% to 80% of the stock of the Corporation.” 554 So.2d at 400 (emphasis added). Emphasizing the fact that in Simmons the only factor under consideration was the 70-80% stock ownership and the resulting control by the majority shareholder is this additional explanation by the Court: "There was no evidence before the trial court ... that the Corporation was established as a subterfuge, that it did not comply with corporate laws, that it kept no corporate records, that it maintained no corporate bank account, that it had no employees, that the Corporation’s money and Simmons’s money were commingled, or that the Corporation was not held out to the public as a corporation.” 554 So.2d at 401. The Court further explained that ”[i]n the absence of undisputed evidence that some or all of these factors existed, the trial court could not conclude that ... piercing the corporate veil was required as a matter of law.” Id.

. Fairfield and amici curiae imply that, to the extent Myrtis Hill relies on the alter ego "rubric," any evidence of inadequate capitalization would not be germane. (As noted, Hill argues that the evidence of Fairfield’s poor financial performance, the sequestering of its assets in a separate entity, and its limited liability insurance also suppo'rt the conclusion that it would be equitable to allow a piercing of the corporate veil.) In addition to whatever probative value inadequate capitalization, as referenced in Duff, has as to the issue of control, it is clear that our cases have never treated the three "rubrics” for piercing the corporate veil as entirely separate and distinct categories with no overlapping considerations or required that a plaintiff choose one and only one of these categories into which to fit his or her arguments. Indeed, it was in reliance upon the research compiled in Piercing the Corporate Veil in Alabama: In Search of a Standard, 35 Ala. L.Rev. 311 (1984), that this Court, in Messick v. Moring, articulated three "factors" it said are used as justification for piercing the corporate veil. In so doing, it did not state that these three were exclusive, only that they were three "factors” that were “commonly used” for this purpose. These three "factors,” or categories, as distilled in the above-referenced law-review article and adopted in Messick, are "1) inadequacy of capital; 2) fraudulent purpose in conception or operation of the business; [and] 3) operation of the corporation as an instrumentality or alter ego.” 514 So.2d at 894. Moreover, as the research that is summarized in the law-review article upon which the Messick Court relied makes clear, these "factors” entail overlapping considerations and are often considered in tandem in order to justify an equitable piercing of the corporate veil. See 35 Ala. L. Rev. at 314 (accurately observing that this Court has “generally relied on at least one of three factors” and that "[ajlthough each of these conditions may be a sufficient independent basis for shareholder liability, the court often cites more than one of them in support of a single result” (citations omitted)). See also 35 Ala. L.Rev. at 316 (noting that the first category of "undercapitalization” or “evad[ing] a just obligation” is “usually accompanied by general recitals of the instrumentality rule”).